**Application of Bernard G. HOUSE, for a Write of Habeas Corpus.**
**No. 45.**

Supreme Court of Alaska.
May 9, 1960.

---

Fred D. Crane and Warren A. Taylor, Fairbanks, for petitioner.

George M. Yeager, Asst. U. S. Atty., Fairbanks, James R. Clouse, Jr., Asst. U. S. Atty., Anchorage, and William Taylor, State Dist. Atty., Fairbanks, for respondent.

NESBETT, Chief Justice.

The question presented by a show cause order why a writ of habeas corpus should not issue, and an intervening motion by the United States to dismiss the Order, is whether the status of petitioner is such that an Alaska state court or judicial officer thereof has no jurisdiction to issue a writ of habeas corpus.

Petitioner was tried, convicted of murder in the first degree and sentenced to life imprisonment without hard labor by the District Court for the Territory of Alaska at Fairbanks on June 10, 1958. He was released by the same court on $25,000 bail pending appeal, which appeal is now pending in the Court of Appeals for the Ninth Circuit. On February 3, 1960 the application of the United States Attorney to the District Court for the Territory of Alaska at Fairbanks for revocation of petitioner's bail was denied. On February 20, 1960 the President signed Executive Order No. 10,-867, which terminated the jurisdiction of the District Court for the Territory of Alaska and activated the new United States District Court for the District of Alaska. On the same date the Alaska Court System assumed its full jurisdiction.

On March 25, 1960, the application of the State District Attorney at Fairbanks to the State Superior Court for revocation of petitioner's bail was granted and that court ordered petitioner remanded to the custody of the State Police. Petitioner was booked into the Fairbanks Federal Jail by the State Police on March 25th and on April 1st was transferred by Hugh Crum, Supervisor of the jail, to McNeil Island prison in the

State of Washington. On April 4th Hugh Crum was served with an Order to Show Cause why a writ of habeas corpus should not issue out of this Court.

Prior to the show cause hearing the Assistant United States Attorney at Fairbanks filed a motion to dismiss the order to show cause and hearing on both motions was held before the Chief Justice in Anchorage on April 27, 1960.

■ The Assistant United States Attorney contends that petitioner is held under the authority or claim and color of authority of the United States by an officer of that government; that the United States has the exclusive and paramount authority to determine by its own judicial tribunes whether a writ of habeas corpus will lie.[1]

If petitioner is actually held under the sole and exclusive authority of the United States, there is merit to the motion and it should be granted. However, facts disclosed by the record indicate that such is not the case.

Petitioner was convicted and sentenced by the District Court for the Territory of Alaska for the crime of murder in the first degree, which was a violation of Territorial law and not a Federal offense. Under the provisions of Sec. 14 of the Alaska Statehood Act, 48 U.S.C.A. preceding section 23, petitioner's appeal was directed to the Court of Appeals for the Ninth Circuit. This section was obviously an expedient provided by Congress while the State court system was being organized.[2] It further specifically provided that in the event of reversal on appeal the appellate court should remand the cause to the newly created State courts or the newly created Federal court, as the nature of the case might require. Therefore, in the event of reversal of petitioner's case now pending before the Court of Appeals for the Ninth Circuit, it would be remanded to the State Supreme Court in accordance with the provisions of the above mentioned section of the Act.

The provisions above referred to and the facts of petitioner's case are inconsistent with the contention that he is now being held under the exclusive authority of the United States. It is obvious that Congress intended that the State have a concurrent interest and responsibility in cases falling in the category of petitioner's until final disposition. This conclusion is reinforced when it is considered that a reversal and remand for a new trial would ultimately place the case before the Superior Court of Alaska as the "successor" court to the sentencing court.[3]

1. Ex parte Royall, 1886, 117 U.S. 241, 249, 6 S.Ct. 734, 29 L.Ed. 868, 870; Ableman v. Booth, 1859, 21 How. 506, 16 L.Ed. 169, 175–176; In re Tarbles Case, 1872, 13 Wall. 397, 20 L.Ed. 597, 601–602; Robb v. Connolly, 1884, 111 U.S. 624, 4 S.Ct. 544, 28 L.Ed. 542, 543–545.

2. Sec. 14 Alaska Statehood Act, Public Law 85–508, July 7, 1958, 72 Stat. 349 provides as follows:
"Sec. 14. All appeals taken from the District Court for the Territory of Alaska to the Supreme Court of the United States or the United States Court of Appeals for the Ninth Circuit, previous to the admission of Alaska as a State, shall be prosecuted to final determination as though this Act had not been passed. All cases in which final judgment has been rendered in such district court, and in which appeals might be had except for the admission of such State, may still be sued out, taken, and prosecuted to the Supreme Court of the United States or the United States Court of Appeals for the Ninth Circuit under the provisions of then existing law, and there held and determined in like manner; and in either case, the Supreme Court of the United States, or the United States Court of Appeals, in the event of reversal, shall remand the said cause to either the State supreme court or other final appellate court of said State, or the United States district court for said district, as the case may require: Provided, That the time allowed by existing law for appeals from the district court for said Territory shall not be enlarged thereby."

3. Sec. 16, Alaska Statehood Act, supra, provides as follows:
"Sec. 16. Jurisdiction of all cases pending or determined in the District Court for the Territory of Alaska not transferred to the United States District Court for the District of Alaska shall

The order of the Superior Court revoking bail provided that petitioner be remanded to the custody of the Alaska State Police. On the same date an officer of the State Police booked petitioner into the Fairbanks Federal Jail, which is under the direct control of Supervisor Hugh Crum, an employee of the United States, who transferred petitioner to McNeil Island penitentiary in the State of Washington approximately 3 days before being served with the Order to Show Cause in this case. This transfer was apparently made on the order of S. W. Inks, Superintendent of Federal Jails Alaska.

The Assistant United States Attorney additionally contends on behalf of Hugh Crum that he did not have custody or control of petitioner at the time he was served with the Order to Show Cause and the order should therefore be dismissed.[4]

The authorities cited in support of this contention are not applicable to the peculiar facts of this case when considered in the light of the expressed intent of the Alaska Statehood Act and the Agreement later to be referred to.

Recent persuasive authorities have held that a writ of habeas corpus directed to a person within the jurisdiction of the court, who has directive power over the immediate jailer of petitioner, will lie, even though the jailer and petitioner are outside the court's jurisdiction.[5]

The record in this case contains a copy of an agreement between the State of Alaska and the Director, Bureau of Prisons of the United States under which the Director agrees to accept for incarceration in Federal penal institutions certain prisoners of the State, on a specified reimbursable basis. One of the provisions of the agreement reads as follows:

"13. The Director will be amenable to all orders and directives from any Alaska Court having jurisdiction over a prisoner in the custody of the Government, and the Director will abide by any orders and directives, concerning such prisoner, not inconsistent with United States statutes, or with rules and regulations of the Bureau of Prisons. The Director will make available to proper authorities the person of any Alaska prisoner whose presence is required and ordered by an Alaska court having jurisdiction over the prisoner."

It is not clear from the record whether this agreement was intended to apply specifically to prisoners sentenced by a District Court for the Territory of Alaska prior to statehood. It is clear however, that the parties recognized the need for the Director to make a prisoner available upon the order of any Alaska court having jurisdiction over the prisoner. An opposite attitude could only result in endless legal confusion in a situation where the State and the United States are attempting under an act of Congress to effect an orderly transition from territorial to statehood status.

In analogous situations, where the United States, by agreement with a state, kept United States prisoners in state penal institutions, the United States courts have held that the state penal institution is to be deemed a United States institution for

---

devolve upon and be exercised by the courts of original jurisdiction created by said State, which shall be deemed to be the successor of the District Court for the Territory of Alaska with respect to cases not so transferred and, as such, shall take and retain custody of all records, dockets, journals, and files of such court pertaining to such cases. The files and papers in all cases so transferred to the United States district court, together with a transcript of all book entries to complete the record in such particular cases so transferred, shall be in like manner transferred to said district court."

4. United States ex rel. Taran v. Thompson, 2 Cir., 192 F.2d 807; Jones v. Biddle, 8 Cir., 131 F.2d 853; Strand v. Schmittroth, 9 Cir., 251 F.2d 590, 602, 603.

5. Day v. Wilson, 1957, 101 U.S.App.D.C. 69, 247 F.2d 60, 62; Eisenstrager v. Forrestal, 1949, 84 U.S.App.D.C. 396, 174 F.2d 961, 967; Burns v. Welch, 1947, 81 U.S.App.D.C. 384, 159 F.2d 29, 30.

many purposes. The keeper of the institution is held to be the keeper of the United States. Persons charged with responsibility for executing writs of the United States court concerning the confinement of United States prisoners are, to the extent of the arrangement existing between the United States and the state, officers of the United States court.[6] These cases are entirely consistent with the expressed intent of paragraph 13 of the agreement between the Director and the State of Alaska quoted above except that the parties are reversed.

█ It appears therefore that the State of Alaska does have concurrent jurisdiction with the United States over petitioner, to the extent provided in the Alaska Statehood Act. Both the United States and the State courts have been assigned functions and responsibilities with respect to prisoners in petitioner's status. The facts of the present detention of petitioner are not such that a State court does not have the power to inquire into the legality of his detention by habeas corpus. Petitioner's present custody in the United States appears to result from the act of a State police officer in booking petitioner into the Fairbanks Federal Jail after the Superior Court had ordered him remanded to the custody of the State. In such a situation the spirit, if not the actual wording of paragraph 13 of the Agreement between the State and the Director should prevail. The fact that petitioner is outside the State of Alaska would not defeat a writ if in fact Hugh Crum does have authority to order the prisoner returned to Alaska. If petitioner is now confined in a Federal prison at the instance of a State official, then a writ directed to the State official with directive power to order his return and release by his Federal jailers would lie under the authority of the Hoffman and Morgan cases, supra, and the requirements of paragraph 13 of the Agreement quoted herein. The affidavit of S. W.

Inks, Superintendent, Federal Jails Alaska, states that he is in charge of the entire Federal Jail System in Alaska. If petitioner is not now confined at the instance of a state official, then a writ might more properly be directed to Superintendent Inks than to Supervisor Hugh Crum because of Inks' greater directive power. A writ directed to Inks under the latter premise should, it appears, be honored by him. Not because state courts generally have the power to require a Federal jailer to produce a Federal prisoner. They do not. It should be honored because petitioner is not exclusively a Federal prisoner. Petitioner's appeal was directed to a Federal appellate court only as an accommodation to the State of Alaska and until its own court system could be organized. A State court has already "succeeded" to the jurisdiction of the Federal Territorial court which sentenced petitioner. His cause was not transferred to the newly created Federal court with the transition. It was transferred to the State Superior Court. If petitioner's case is reversed on appeal, his cause will be remanded to the State for further processing and final disposition. However, it is unnecessary to decide these questions in this proceeding as Hugh Crum was not ordered to produce petitioner for this hearing. The motion to dismiss the Order to Show Cause is denied.

█ The next question is raised by petitioner's contention that the Superior Court in Fairbanks lacked jurisdiction to revoke bail pending appeal.

Petitioner's argument is that he was tried, sentenced and released on bail pending appeal by the District Court for the Territory of Alaska, that while his appeal was pending in the Court of Appeals for the Ninth Circuit, Executive Order No. 10,867, U.S.Code Congressional and Administrative News 1960, p. 333, terminated the jurisdiction of the District Court for the Territory of Alaska, with the result that

---

6. United States v. Hoffman, D.C.N.D.Ill.1925, 13 F.2d 269, 272; In re Morgan, D.C.N.D. Iowa 1948, 80 F.Supp. 810, 817.

only the Court of Appeals for the Ninth Circuit now has jurisdiction to revoke bail.

This argument overlooks the fact that the Alaska Statehood Act made specific provisions for a "successor" court to the District Court for the Territory of Alaska. Congress provided that as to all cases pending or determined in the Territorial court at the time its jurisdiction was terminated, which were not transferred to the newly created United States District Court for the District of Alaska, jurisdiction was to devolve upon and be exercised by the Courts of original jurisdiction created by the State of Alaska, which courts "shall be deemed to be the successor of the District Court for the Territory of Alaska." [7]

Section 15 of the Act made specific provision that only those cases pending or determined in the District Court for the Territory of Alaska which were of such a nature as to be within the jurisdiction of a district court of the United States were to be transferred to the newly created United States District Court for the District of Alaska. All other causes pending or determined in the District Court for the Territory of Alaska were to be transferred to the appropriate State court of Alaska. [8]

The crime of murder, under the facts of this case as far as they are known to the court, was not of such a nature as to be within the jurisdiction of a district court of the United States. Petitioner's case was therefore not transferred to the United States District Court for the District of Alaska but to the Superior Court of Alaska, Fourth District, the successor court to the District Court for the Territory of Alaska. [9]

Executive Order No. 10,867, terminating the jurisdiction of the District Court for the Territory of Alaska, was effective February 20, 1960. The Superior Court of the State of Alaska was in existence and commenced functioning on that date and petitioner's cause was transferred to that court. As successor to the District Court for the Territory of Alaska, the Superior Court in the Fourth Judicial District in Fairbanks acquired all the jurisdiction and powers formerly had by the Territorial court.

One of the powers to which the Superior Court succeeded was that of revoking bail pending appeal. Both the Federal and State rules of court provide that any court or any judge or justice authorized to grant bail may at any time revoke the order admitting the defendant to bail. [10]

Section 14 of the Alaska Statehood Act provided specifically that all appeals taken from the Territorial court to the Court of Appeals for the Ninth Circuit previous to the admission of Alaska as a state should be prosecuted to final determination as though the Act had not been passed. As to final judgments rendered in the Territorial court and in which appeals might be had except for the admission of Alaska as a state, provision was made that such

---

7. Sec. 16, Alaska Statehood Act, supra.

8. Sec. 15, Alaska Statehood Act, provides in part as follows:

"Sec. 15. All causes pending or determined in the District Court for the Territory of Alaska at the time of the admission of Alaska as a State which are of such nature as to be within the jurisdiction of a district court of the United States shall be transferred to the United States District Court for the District of Alaska for final disposition and enforcement in the same manner as is now provided by law with reference to the judgments and decrees in existing United States district courts. All other causes

pending or determined in the District Court for the Territory of Alaska at the time of the admission of Alaska as a State shall be transferred to the appropriate State court of Alaska * * "

9. Sec. 16, Alaska Statehood Act, supra; Secs. 31, 32, Art. II, Chapter 50, Session Laws of Alaska 1959, as amended by Secs. 1, 2, Ch. 151, Session Laws of Alaska, 1960, creating and defining the jurisdiction of the Superior Court of Alaska.

10. Rule 46(a) (2), Federal Rules of Criminal Procedure, as amended, July 8, 1956, 18 U.S.C.A.; Rule 41(b) Rules of Criminal Procedure, State of Alaska.

judgments might still be prosecuted to the Supreme Court of the United States or the Court of Appeals for the Ninth Circuit as before. In either case in the event of reversal, remand should be made to either the State Supreme Court or the United States District Court for the District of Alaska, as the nature of the case might require.

While the scope of Section 14 was reduced somewhat by the decision of the Court of Appeals for the Ninth Circuit in Parker v. McCarrey, that decision does not affect this case where judgment pre-dates statehood. The obvious intent, expressed in that section and throughout the Alaska Statehood Act, was that no hiatus be created in the administration of justice by the transition from a territorial to a state court system.

The fact that the effect of the Act was to temporarily create certain areas of concurrent jurisdiction between Federal and State courts such as the right to revoke bail pending appeal, is no objection to what is otherwise a practical and effective solution to a difficult problem.

Petitioner argues that the decision of this court in Hanover Fire Ins. Co. of New York v. Bennett et al, is controlling, and supports his contention that the Superior Court did not have jurisdiction to revoke bail. A careful reading of that decision will disclose that this court merely held that it had jurisdiction to hear *appeals* from the then existing United States District Courts for the District of Alaska (Territorial) only as to judgments rendered by those courts after January 3, 1959.

Counsel for petitioner argues that petitioner's contract of bail runs to the United States and cannot be abrogated by a State court.

This contention is refuted by the bond itself which obviously was re-executed by petitioner and his sureties on February 8, 1960 in expectation of the early assumption of jurisdiction by State courts. The obligation of the bond specifically runs to the "United States of America and to the State of Alaska" and otherwise fully provides for the protection of the United States and the State of Alaska.[11]

The motion for a writ of habeas corpus is denied.

AREND and DIMOND, JJ., not participating.

---

11. The pertinent portion of petitioner's appeal bond provides as follows:

"Now, Therefore, if the defendant shall in all respects perform the orders and judgment of the appellate court on the appeal, or the orders of the District Court for the District of Alaska, Fourth Judicial Division, or its successor, the United States District Court for the District of Alaska, or the Superior Court for the State of Alaska, Fourth Judicial District, then this bond is to be void; but if he fails to do so, the amount of the bond shall be due forthwith.

"If the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in the District Court for the District of Alaska, Fourth Judicial Division, or its successor, the United States District Court for the District of Alaska, or the Superior Court for the State of Alaska, Fourth Judicial District, against each debtor jointly and severally for the amount stated and execution may issue for said amount with interests and costs as provided by law. By entering into this undertaking, each and every obligor submits himself to the jurisdiction of the District Court for the District of Alaska, Fourth Judicial Division, and its successor courts, the United States District Court for the District of Alaska, or the superior court for the State of Alaska, Fourth Judicial District. Each and every obligor irrevocably appoints the Clerk of the District Court for the District of Alaska, Fourth Judicial Division, Fairbanks, Alaska or the Clerk for the United States District Court for the District of Alaska, or the Clerk for the Superior Court for the State of Alaska, Fourth Judicial District as his agent upon whom any papers affecting his liabilities may be served.

"This bond is signed on the 8 day of February, 1960, at Fairbanks, Alaska."