Joseph HARVEY, Petitioner,

v.

Mark ANTRIM, Alaska Commissioner
of Corrections, and Frank Luna,
Warden, Respondents.

No. A–9839.

Court of Appeals of Alaska.

May 4, 2007.

Joseph Harvey, in propria persona, Eloy,
Arizona, for the Petitioner.

Douglas Kossler, Assistant Attorney Gen-
eral, Office of Special Prosecutions and Ap-
peals, Anchorage, and Talis J. Colberg, At-
torney General, Juneau, for the Respondent.

Before: COATS, Chief Judge, and
MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Joseph Harvey is currently imprisoned as
the result of a criminal judgement entered
against him by the superior court. For the
facts of Harvey's underlying criminal case,
see this Court's decision in *Todd v. State,* 884
P.2d 668 (Alaska App.1994).

The Commissioner of Corrections has di-
rected that Harvey serve his sentence in a
private prison in Arizona (under contract

with the Alaska Department of Corrections). The respondent Frank Luna is the warden of that Arizona prison.

Harvey has filed a petition for writ of habeas corpus in the superior court (File Number 3AN–05–7744 Civ). In that petition, Harvey challenges certain procedures involved in his prosecution and sentencing. In addition, Harvey has filed an original application for relief in the appellate courts—an application which he entitled a "Petition for Habeas Corpus Relief From Void Judgments". (Harvey directed this petition to the Alaska Supreme Court, but the Appellate Court Clerk's Office concluded that Harvey's petition was properly addressed to this Court, since Harvey is seeking relief from a criminal conviction. See AS 22.07.020(a).)

Although it is difficult to tell from Harvey's pleadings exactly what his arguments are, it appears that these arguments involve a challenge to Alaska's pre–2005 sentencing statutes (based on the United States Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)), as well as a challenge to Alaska's laws governing the appointment of counsel for indigent criminal defendants. These underlying claims have not yet been litigated, because Harvey's appeal has not yet reached the briefing stage.

The issue we address in this opinion arises from the fact that, after Harvey filed his "Petition for … Relief From Void Judgments", he then filed a separate claim for relief—a pleading which he entitled a "Motion … to Vacate All Judgments, Orders, and Opinions Issued In This Matter". In this latest pleading—which we are treating as an original application for relief in the nature of mandamus—Harvey contends that the Alaska courts have no authority to entertain any litigation concerning the legality of his restraint, and that we should therefore declare all judicial proceedings up to this point null and void. Harvey argues that the Alaska courts lost all jurisdiction over him when the Commissioner of Corrections transferred him to the prison in Arizona (that is, to a location outside the geographic boundaries of Alaska).

On March 13, 2007, a member of this Court (the author of this opinion) issued a single-judge order rejecting Harvey's argument and concluding that the courts of Alaska have the authority to adjudicate Harvey's habeas corpus claims even though Harvey is physically located in Arizona. Harvey now seeks full-court reconsideration of that single-judge order.

■ It is clear that, under AS 22.10.020(a) and 020(c), and under AS 22.07.020(a), both the superior court and this Court have *subject-matter* jurisdiction over Harvey's application for habeas corpus relief. But Harvey argues that no court in Alaska has the requisite *personal* jurisdiction to entertain his claims for relief—both because he himself is physically located outside the boundaries of Alaska, and because his immediate custodian, Warden Frank Luna, is likewise physically located outside Alaska.

The fact that Harvey is serving his sentence outside the physical boundaries of Alaska does not negate this state's jurisdiction over him. See *Hertz v. State,* 22 P.3d 895, 900 (Alaska App.2001): "Alaska courts have long recognized that the State retains jurisdiction over inmates transferred to foreign jurisdictions to serve sentences for crimes committed in this state."

■ However, Harvey relies on decisions of the United States Supreme Court indicating that, in habeas corpus litigation, the crucial element of personal jurisdiction does not refer to the court's jurisdiction over the person whose liberty is sought, but rather to the court's jurisdiction over the *custodian* whose act of restraint is being challenged. This is because a writ of habeas corpus is a court order directed to the custodian of the person whose restraint is in question—an order commanding the custodian to appear in court and demonstrate that the restraint is lawful. See *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), where the United States Supreme Court held that when a federal district court is adjudicating a petition for writ of habeas corpus, the prisoner's presence within the territorial jurisdiction of the court is not "an invariable prerequisite" to the exercise of the district court's jurisdic-

tion. *Id.,* 410 U.S. at 495–98, 93 S.Ct. at 1130–31. Because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody", a federal district court can entertain a habeas corpus petition under 28 U.S.C. § 2241 as long as "the custodian can be reached by service of process." *Id.,* 410 U.S. at 494–95, 93 S.Ct. at 1129–1130.

Although it appears that a court must normally have jurisdiction over the prisoner's custodian, the Alaska Supreme Court has clarified that, at least for purposes of habeas corpus litigation involving criminal matters, the custodian named as the respondent in habeas corpus litigation need not be a person who has immediate physical control of the prisoner. Instead, the respondent can be a person—for instance, the Commissioner of Corrections—who has the authority to order the people who have immediate physical control of the prisoner to produce the prisoner before the court.

> The fact that [a habeas corpus] petitioner is outside the State of Alaska [does] not defeat a writ if in fact [the named respondent] does have authority to order the prisoner returned to Alaska. [Because the] petitioner [in this case] is now confined in a Federal Prison at the instance of a State official, ... a writ directed to the State official with directive power to order his return and release by his Federal jailers would [be proper].

*Application of House,* 352 P.2d 131, 135 (Alaska 1960).

When Harvey filed his petition for writ of habeas corpus in the appellate courts, he named two respondents. One of these respondents was Mark Antrim, the Alaska Commissioner of Corrections. (Since that time, Mr. Antrim has left that post; the current commissioner of corrections is Joseph Schmidt.) The other named respondent was Frank Luna, the warden of the correctional facility in Arizona where Harvey is housed. Under Alaska law, both Antrim and Luna were proper respondents. Luna had direct physical control of Harvey, and Antrim had the authority to direct Luna to release Harvey from confinement in Arizona so that Harvey could be produced to the superior court in Alaska.

Harvey apparently concedes that the courts of Alaska have personal jurisdiction over former Commissioner Antrim and his successor, Commissioner Schmidt. We say "apparently concedes" because, in Harvey's motion for reconsideration of the single-judge order, Harvey has crossed out the reference to the Commissioner of Corrections in the caption of his pleading, leaving Warden Frank Luna as the sole respondent whose name is clearly legible.

In his motion for reconsideration, Harvey argues that the courts of Alaska have no jurisdiction over his habeas corpus litigation because the Alaska courts have no personal jurisdiction over his immediate custodian, Warden Luna. Harvey relies primarily on the United States Supreme Court's decision in *Rumsfeld v. Padilla,* 542 U.S. 426, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004).

*Padilla* involved a person who was imprisoned in the Navy brig in Charleston, South Carolina. *Id.,* 542 U.S. at 432, 124 S.Ct. at 2716. Padilla sued for writ of habeas corpus, but he named Secretary of Defense Donald Rumsfeld as the respondent, and he filed his lawsuit in the federal district court for the Southern District of New York. The Supreme Court held that, under the terms of the federal habeas corpus statute, 28 U.S.C. § 2241, and under the circumstances of Padilla's case, the only proper respondent to Padilla's petition for writ of habeas corpus was the commander of the Navy brig where he was being held:

> In accord with the ... language [of the federal habeas corpus statute] and [the] immediate custodian rule [announced in *Wales v. Whitney,* 114 U.S. 564, 574, 5 S.Ct. 1050, 29 L.Ed. 277 (1885) ], ... the default rule is that the proper respondent [in habeas corpus litigation] is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official. [Citations omitted] No exceptions to this rule, either recognized or proposed, *see post,* at 2729 (KENNEDY, J., concurring), apply here.

*Padilla,* 542 U.S. at 435–36, 124 S.Ct. at 2718. And, because the proper respondent was the commander of the Navy brig in Charleston, the proper court for Padilla's habeas corpus litigation was the federal district court for the District of South Carolina. *Id.,* 542 U.S. at 442, 451, 124 S.Ct. at 2722, 2727.

Based on the *Padilla* decision, Harvey argues that his habeas corpus litigation can take place only in a court that has personal jurisdiction over his immediate custodian—Frank Luna, the warden of the prison where Harvey is confined.

There are Supreme Court cases suggesting that personal jurisdiction over a prisoner's immediate custodian is not required in all instances. See *Padilla,* 542 U.S. at 436 n. 9, 124 S.Ct. at 2718 n. 9, where the Court acknowledged a "[longstanding] exception to the immediate custodian rule in the military context where an American citizen is detained outside the territorial jurisdiction of any district court." See also *Rasul v. Bush,* 542 U.S. 466, 478–79, 124 S.Ct. 2686, 2695, 159 L.Ed.2d 548 (2004), a case decided on the same day as *Padilla,* in which the Supreme Court held that the federal district court for the District of Columbia had jurisdiction to consider the petitions for writ of habeas corpus filed by foreign nationals being detained as "enemy combatants" at the U.S. Naval Station in Guantanamo Bay, Cuba—an enclave that, technically, is part of Cuba and lies outside the territorial jurisdiction of the United States, even though (as a practical matter) the United States exercises complete control over the area.

But we need not resolve these outer reaches of a court's habeas corpus jurisdiction—because, under the facts of Harvey's case, the courts of Alaska *do* have personal jurisdiction over Warden Luna for purposes of Harvey's habeas corpus litigation.

The leading case on this point is *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443

(1973). *Braden* involved a defendant who was serving a sentence in an Alabama prison when the State of Kentucky filed a "detainer" against him—that is, an order directing the officials of Alabama to detain Braden when his sentence was completed so that Kentucky might then undertake criminal proceedings against him. Braden wished to challenge his Kentucky indictment, so he filed a petition for writ of habeas corpus in the federal district court for the Western District of Kentucky.[1] The district court granted relief, but the Sixth Circuit reversed—concluding that the Kentucky district court had no jurisdiction to proceed, and that the proper venue for Braden's habeas corpus litigation was Alabama.[2] Braden then pursued the matter to the United States Supreme Court.

The Supreme Court noted that Braden's underlying claim was an attack on "the validity of the Kentucky indictment which [forms the basis for] the detainer lodged against him by the officials of that State."[3] The Supreme Court further noted that, "[i]n terms of traditional venue considerations, ... Kentucky is almost surely the most desirable forum for the adjudication of [Braden's] claim. It is in Kentucky ... where all of the material events took place [and where] the records and witnesses pertinent to [Braden's] claim are likely to be found."[4]

The Supreme Court then declared that, to resolve the jurisdictional issue, the question was not whether Braden himself was within the jurisdiction of the Kentucky federal court, but rather whether Braden's custodian—the warden in Alabama—was within the Kentucky court's jurisdiction.[5]

For purposes of resolving Harvey's present claim to this Court, the most important aspect of the *Braden* decision is the Supreme Court's statement that the Kentucky court's jurisdiction over Braden's custodian did *not* hinge on whether that custodian was located within the geographic jurisdiction of the Kentucky court. Rather, the Supreme Court

1. *Braden,* 410 U.S. at 485–86, 93 S.Ct. at 1125.

2. *Id.,* 410 U.S. at 486, 93 S.Ct. at 1125.

3. *Id.,* 410 U.S. at 486–87, 93 S.Ct. at 1125.

4. *Id.,* 410 U.S. at 493–94, 93 S.Ct. at 1129.

5. *Id.,* 410 U.S. at 494–95, 93 S.Ct. at 1129–1130.

declared, the Kentucky court had jurisdiction over Braden's Alabama custodian "so long as the custodian [could] be reached by service of process".[6]

The Supreme Court then summarily declared that "the respondent [*i.e.*, the Alabama warden] was properly served in [the western] district [of Kentucky]".[7] In support of this proposition, the Court cited *Strait v. Laird*, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972).

In *Strait v. Laird*, the Supreme Court held that, for purposes of habeas corpus litigation, a court can properly exercise jurisdiction over a custodian who is not physically present within the court's territorial jurisdiction if that custodian has sufficient contacts with the court's territorial jurisdiction to be reachable by service of process.

*Strait* involved an Army Reserve officer who sought discharge from the Armed Forces as a conscientious objector. When his request for discharge was denied, he filed a petition for writ of habeas corpus in his home state of California. The federal circuit court of appeals was persuaded by the Army's argument that the proper venue for the petition was in Indiana—because Strait's "custodian" (*i.e.*, his commanding officer) was the commander of the Reserve Officer Components Personnel Center, located at Fort Benjamin Harrison in Indiana.

The Supreme Court rejected this view of the matter. The Court held that, even though Strait's ultimate commander was located in Indiana, this commanding officer was affecting Strait through agents in California, and thus the commander was reachable by service of process in California:

> Strait's commanding officer is "present" in California through [the agency of] the officers in the hierarchy of the command who processed this serviceman's application for discharge. To require him to go to Indiana where he never has been or assigned to be would entail needless expense and inconvenience.... The concepts of "custody" and "custodian" are sufficiently broad to allow us to say that the

commanding officer in Indiana, operating through officers in California in processing petitioner's claim, is in California for the limited purposes of habeas corpus jurisdiction.

*Strait*, 406 U.S. at 345–46, 92 S.Ct. at 1695–96.

In an accompanying footnote (footnote 2), the Supreme Court declared that it was "well settled" that this type of "presence"—*i.e.*, presence through agency—"may suffice [to establish] personal jurisdiction". The Court then explained that, because "Strait's commanding officer [was] 'present' in California through his contacts in that State[,] he [was] therefore 'within reach' of the [California] federal court in which Strait filed his petition." *Id.*, 406 U.S. at 346 n. 2, 92 S.Ct. at 1696 n. 2.

■ Both *Braden* and *Strait* confirm that, even though a court must normally have jurisdiction over a prisoner's immediate custodian in order for the court to entertain the prisoner's habeas corpus petition, that jurisdiction need not be based on the custodian's physical presence within the court's territorial jurisdiction. Instead, the requisite jurisdiction can be established by service of process if, because of agency or otherwise, the custodian has sufficient contacts with the court's territorial jurisdiction.

In Harvey's case, his immediate custodian (Warden Luna) holds him in prison as the agent of the Alaska Department of Corrections. Harvey's case is therefore analogous to the situation addressed in *Braden v. 30th Judicial Circuit Court of Kentucky*.

In *Braden*, the petitioner's immediate custodian was a prison warden in Alabama, but the Supreme Court held that this warden became the agent of the State of Kentucky after Kentucky officials filed a detainer against Braden—and that, because of this agency, the Alabama warden was reachable by service of process in the Western District of Kentucky.

The same rule applies here. Because Harvey's immediate custodian, Warden Luna,

**6.** *Id.*, 410 U.S. at 495, 93 S.Ct. at 1130.

**7.** *Id.*, 410 U.S. at 500, 93 S.Ct. at 1132.

holds him as an agent of the Alaska Department of Corrections, Luna is reachable by service of process in the State of Alaska. Thus, even if Luna were the sole respondent, the courts of Alaska would have jurisdiction to hear and decide Harvey's habeas corpus claims.

We therefore re-affirm what the Alaska Supreme Court said forty-seven years ago in *Application of House*, 352 P.2d at 135: The fact that an Alaska prisoner is confined outside the territorial limits of Alaska does not defeat the authority of Alaska courts to entertain the prisoner's habeas corpus litigation if the prisoner's immediate custodian is an agent of the Alaska Department of Corrections, with Alaska correctional officials having the authority to order the prisoner returned to Alaska.

Accordingly, Harvey's "Motion ... to Vacate All Judgments, Orders, and Opinions Issued In This Matter"—that is, Harvey's application for an order rescinding all previous orders entered in his case, and prohibiting the courts of Alaska from adjudicating any of the issues raised in his habeas corpus litigation—is DENIED.