

# SUPREME COURT OF ARKANSAS

No. CV–14–650

| | |
|---|---|
| | Opinion Delivered February 26, 2015 |
| THERNELL HUNDLEY<br>APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. CV–2013–315–5] |
| V. | |
| RAY HOBBS, DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION<br>APPELLEE | HONORABLE JODI RAINES DENNIS, JUDGE<br><br>REVERSED AND REMANDED. |

**JOSEPHINE LINKER HART, Associate Justice**

Appellant, Thernell Hundley, appeals from the Jefferson County Circuit Court's order dismissing his petition for writ of habeas corpus. In the order, the circuit court found that because Hundley, who was convicted of capital-felony murder in Arkansas, is currently incarcerated in a correctional facility in New Jersey, the court lacked jurisdiction to issue a writ and make it returnable in Jefferson County. Hundley argues that because he was incarcerated in New Jersey under the terms of the Interstate Corrections Compact (ICC), he remained in the custody of Ray Hobbs, the Director of the Arkansas Department of Correction (ADC), which is headquartered in Jefferson County, for the purpose of the state's habeas corpus statutes. He concludes that the court thus had jurisdiction to issue the writ to Hobbs as the Director of the ADC and make it returnable in Jefferson County. We hold that the circuit court has jurisdiction and accordingly reverse and remand.

SLIP OPINION

Hundley's petition for writ of habeas corpus alleged that he is an inmate in the ADC who is incarcerated in New Jersey under the terms of the ICC. According the petition, Hundley pleaded guilty to and is currently serving a sentence of life imprisonment without the possibility of parole for the crime of capital-felony murder. Hundley alleged that the offense occurred on or about September 17, 1979; that a judgment of conviction was entered in Clark County Circuit Court on July 16, 1980; and that he was born on May 14, 1962, making him seventeen years old at the time of the crime. Citing *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012), and *Graham v. Florida*, 560 U.S. 48 (2010), Hundley argued that the imposition of a mandatory sentence of life imprisonment without the possibility of parole on a juvenile offender for capital-felony murder or the imposition of a life sentence on a juvenile offender for the felony of rape violated the Eighth Amendment's prohibition against cruel and unusual punishments. Hundley further argued that he had properly brought his petition in Jefferson County because he was incarcerated in New Jersey under the terms of the ICC, and the ADC, which is headquartered in Jefferson County, controlled his own location.

At the request of the circuit court, Hobbs filed a responsive memorandum. Hobbs argued that because Hundley was incarcerated in a New Jersey correctional facility, the circuit court lacked jurisdiction to issue a writ of habeas corpus make it returnable in Jefferson County. In response, Hundley argued that under the ICC, the contract entered into between Arkansas and New Jersey, and Arkansas habeas statutes, the circuit court had jurisdiction to issue the writ and make it returnable in Jefferson County. Appended to his response was the "Contract for Services Between the State of Arkansas and the State of New Jersey for the

Implementation of the Interstate Corrections Compact" (Contract). In its order dismissing the petition for writ of habeas corpus, the circuit court concluded that because Hundley was physically located in New Jersey, it lacked jurisdiction to issue a writ and make it returnable in Jefferson County.

Hundley appeals from the dismissal. On appeal, Hundley relies on the provisions of the ICC and the Contract and contends that because Hobbs, as the Director of the ADC, retains control over Hundley, and under the terms of the ICC and the Contract, may request that he be returned from New Jersey to Jefferson County, the circuit court had jurisdiction to issue the writ to Hobbs as the Director of the ADC and make the writ returnable in Jefferson County, where the ADC is headquartered.

Under our habeas statutes, the power of the "circuit court to issue writs of habeas corpus shall be coextensive with the state." Ark. Code Ann. § 16-112-102 (a)(1) (Repl. 2006). While a court may have jurisdiction to issue the writ, however, the question arises as to whether a writ may be made returnable. Our statutes provide, "The writ shall be directed to the person in whose custody the prisoner is detained, and made returnable as soon as may be . . . before the circuit judges of the county in which it may be served, if either are within the county." Ark. Code Ann. § 16-112-105(b)(1) (Repl. 2006). We have construed "the person in whose custody the prisoner is detained" to mean the "person . . . having physical custody of the prisoner." *State Dep't of Pub. Welfare v. Lipe*, 257 Ark. 1015, 1017, 521 S.W.2d 526, 528 (1975).

The State relies on *Bell v. Hobbs*, 2014 Ark. 479 (per curiam), where we held that

3

SLIP OPINION

because Bell had been transferred to a penitentiary in Utah, the Jefferson County Circuit Court did not have jurisdiction to return a writ of habeas corpus to effect Bell's release from custody. There, we observed that a "circuit court does not have jurisdiction to issue and make a returnable writ to release a prisoner not in custody in that court's jurisdiction." *Id.* at 2. The State assures this court that Bell was transferred to Utah pursuant to the ICC. We note, however, that this court did not address in the *Bell* per curiam the effect of a transfer of an inmate from the ADC to another state under the ICC. Thus, *Bell* is of limited precedential value for the issue raised here.

The ICC defines a "sending state" as "a state party to this compact in which conviction or court commitment was had." Ark. Code Ann. § 12-49-102, art. II(b) (Repl. 2009). A "receiving state" is "a state party to this compact to which an inmate is sent for confinement other than a state in which conviction or court commitment was had." Ark. Code Ann. § 12-49-102, art. II(c). Hundley was convicted and sentenced in Arkansas and is serving his Arkansas sentence in New Jersey. Thus, in this case, Arkansas is the "sending state," and New Jersey is the "receiving state." The ICC permits the states to make contracts with other states "for the confinement of inmates on behalf of a sending state in institutions situated within receiving states." Ark. Code Ann. § 12-49-102, art. III(a). This contract shall provide for the "[d]elivery and retaking of inmates." Ark. Code Ann. § 12-49-102, art. III(a)(4).

The ICC provides that the receiving state acts "solely as agent for the sending state." Ark. Code Ann. § 12-49-102, art. IV(a). Under the ICC, inmates confined in another state "shall at all times be subject to the jurisdiction of the sending state and may at any time be

4

removed therefrom for transfer to a prison or other institution within the sending state . . . for discharge, or for any other purpose permitted by the laws of the sending state." Ark. Code Ann. § 12-49-102, art. IV(c). Further, "confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." Ark. Code Ann. § 12-49-102, article IV(e). The ICC also provides that "[a]ny hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state, or of the receiving state if authorized by the sending state." Ark. Code Ann. § 12-49-102, article IV(f). Further, the ICC provides that "[a]ny decision of the sending state in respect of any matter over which it retains jurisdiction pursuant to this compact shall be conclusive upon and not reviewable within the receiving state." Ark. Code Ann. § 12-49-102, art. V(a).

The Contract was executed by Hobbs as the Director of the ADC. The Contract provides that "sending state" is to be "construed to include and refer to the appropriate official or agency." We note that the Contract permits the sending state to request and authorize the receiving state to hold probation or disciplinary hearings. The Contract further provides that the "statutes of the sending state shall govern in any matter relating to an inmate confined pursuant to this contract," and that the "sending state undertakes to defend any action or proceedings involving the legality of the mere confinement of any of its inmates." The Contract further provides that an "inmate from the sending state legally confined in an institution of the receiving state shall not be removed by any person without an approval from

the sending state." Further, the "receiving state will deliver any of said inmates to the proper officials of the sending state upon demand made to the receiving state."

Thus, under the ICC, Hundley remains under the jurisdiction of Arkansas, Hundley may be returned to Arkansas for any purpose permitted by Arkansas law, and Hundley cannot be deprived of any legal rights that he would have had if confined in Arkansas. Further, the Contract provides that Hobbs, as Director of the ADC, has agreed to defend actions involving the legality of Hundley's confinement under Arkansas law. Importantly, under the Contract, Hobbs, as Director of the ADC, controls where Hundley is physically incarcerated. Accordingly, we hold that, even though Hundley is confined in New Jersey under the ICC, for the purposes of our habeas statutes, Hobbs, as the Director of the ADC, is the person in whose custody Hundley is detained, as he determines where Hundley is physically incarcerated. As Hobbs is in Jefferson County, the Jefferson County Circuit Court may issue the writ to Hobbs and make the writ returnable in Jefferson County.

In support of our reasoning, we find persuasive the case of *Barrett v. Belleque*, 176 P.3d 1272 (Or. 2008). In *Barrett*, the Oregon Supreme Court was confronted with the issue of whether a petition for writ of habeas corpus was moot because the petitioner had been transferred from Oregon to Oklahoma under the ICC, and thus, neither the petitioner nor his custodian was in Oregon but instead both were in Oklahoma. The Oregon Supreme Court noted that, under the ICC, transferred inmates remained under the jurisdiction of the sending state and could be returned to the sending state, and that the inmate still enjoyed the legal rights that the inmate would have had in the sending state. *Id.* at 1276. Quoting from Oregon's

6

SLIP OPINION

habeas statute, that court noted that, to qualify for habeas relief, a petitioner must be "imprisoned or otherwise restrained of liberty within this state." *Id*. at 1276 (emphasis omitted). The court concluded, however, that the "terms of the ICC . . . supplement the ordinary habeas jurisdictional analysis." *Id*. The court noted that under the ICC, the petitioner could not be deprived of any legal rights he would have enjoyed in Oregon. Thus, the court concluded that his petition was not moot. Also, in *Boatwright v. Director, Department of Prisons*, 849 P.2d 274 (Nev. 1993), an inmate who was convicted in Nevada and confined in an Arizona prison under the Western Interstate Corrections Compact (WICC), filed a petition for writ of habeas corpus in Nevada. The Nevada Supreme Court held that under the WICC, the inmate remained subject to the jurisdiction of Nevada even though incarcerated in Arizona. *Id*. at 321. The court concluded that "[b]ecause appellant is being held solely under the authority of a Nevada judgment of conviction, appellant remains in the custody of the respondent director of the department of prisons," and thus the inmate could prosecute his petition for writ of habeas corpus in Nevada while physically incarcerated in Arizona. *Id*. The court also noted that under the WICC, confinement in a receiving state did not did not deprive an inmate of any legal rights or of rights to participate in and derive any benefit or status change from any proceeding available to the inmate in the sending state. *Id*.

Like the supreme courts of Oregon and Nevada, we conclude that the terms of the ICC and the Contract supplement our ordinary habeas jurisdictional analysis. Hundley is detained in the custody of Hobbs, the Director of the ADC, and the writ is returnable in Jefferson

County. Thus, we hold that Jefferson County has jurisdiction over Hundley's petition for writ of habeas corpus and reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

DANIELSON, J., dissents.

**PAUL E. DANIELSON, Justice, dissenting.** I fully agree that Arkansas prisoners confined in out–of–state facilities under the Interstate Corrections Compact ("ICC"), Arkansas Code Annotated § 12-49-102 (Repl. 2009), must be afforded an avenue by which to seek habeas relief; however, I am simply unable to reconcile the majority's analysis with our long-standing and well-settled case law. Because I tend to be more persuaded by the Alaska Court of Appeals' decision in *Harvey v. Antrim*, 160 P.3d 673 (Alaska Ct. App. 2007), and because Hundley did not also direct his petition to his custodian, his New Jersey warden, an agent of appellee Hobbs, I would affirm the circuit court's dismissal of his habeas petition. I therefore respectfully dissent.

It is well settled that the writ of habeas corpus is a vital privilege that is protected by the Arkansas Constitution. *See* Ark. Const. art. 2, § 11; *Cloird v. State*, 349 Ark. 33, 76 S.W.3d 813 (2002) (per curiam); *State v. Stapleton*, 345 Ark. 500, 51 S.W.3d 862 (2001). It is equally well settled that a petition for the writ is properly addressed to the circuit court in the county in which the petitioner is held in custody[1] and that the writ is to be directed to the person in

---

[1]This is true unless the petition is filed pursuant to Act 1780 of 2001, in which case the petition is properly filed in the court in which the conviction was entered. *See Cromeans v. Hobbs*, 2014 Ark. 318 (per curiam); *Henderson v. State*, 2014 Ark. 180 (per curiam).

SLIP OPINION

whose custody the prisoner is detained. *See* Ark. Code Ann. § 16–112–105(b)(1) (Repl. 2006); *Meraz v. State*, 2013 Ark. 419 (per curiam); *Barnett v. Burl*, 2011 Ark. 483 (per curiam); *Watts v. Norris*, 2009 Ark. 370 (per curiam). We have held that, in order for a circuit court to issue and make returnable a writ of habeas corpus to effect the prisoner's release, the circuit court must have personal jurisdiction over the custodian with immediate physical custody of the prisoner. *See, e.g.*, *Tyson v. State*, 2014 Ark. 421, 444 S.W.3d 361 (per curiam); *Lukach v. Hobbs*, 2014 Ark. 106 (per curiam); *Wilencewicz v. Hobbs*, 2012 Ark. 230 (per curiam).

In the instant case, Hundley is confined within a New Jersey correctional facility, pursuant to Arkansas's ICC. Likewise, in *Harvey*, Harvey was convicted in Alaska, yet was confined and serving his Alaska sentence in an Arizona correctional facility under a contract with the Alaska Department of Corrections. *See Harvey*, 160 P.3d 673. Curiously, despite his having named as respondents to his habeas petition both the Alaska Commissioner of Corrections and the warden of the Arizona facility in which he was housed, Harvey claimed that the courts of Alaska had no jurisdiction over his habeas litigation because the Alaska courts had no personal jurisdiction over his immediate custodian, the Arizona warden. *See id.*

The Alaska Court of Appeals disagreed, relying on *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973), and *Strait v. Laird*, 406 U.S. 341 (1972), and opined that

> [b]oth *Braden* and *Strait* confirm that, even though a court must normally have jurisdiction over a prisoner's immediate custodian in order for the court to entertain the prisoner's habeas corpus petition, that jurisdiction need not be based on the custodian's physical presence within the court's territorial jurisdiction. Instead, the requisite jurisdiction can be established by service of process if, because of agency or otherwise, the custodian has sufficient contacts with the court's territorial jurisdiction.

SLIP OPINION

*Harvey*, 160 P.3d at 677. The court reasoned that in Harvey's case, "his immediate custodian (Warden Luna [of the Arizona correctional facility]) holds him in prison as the agent of the Alaska Department of Corrections," and because the Arizona warden held him as an agent of the Alaska Department of Corrections, "Luna is reachable by service of process in the State of Alaska." *Id.* at 677–78. Accordingly, the court held,

> [t]he fact that an Alaska prisoner is confined outside the territorial limits of Alaska does not defeat the authority of Alaska courts to entertain the prisoner's habeas corpus litigation if the prisoner's immediate custodian is an agent of the Alaska Department of Corrections, with Alaska correctional officials having the authority to order the prisoner returned to Alaska.

*Id.* at 678.

Indeed, the instant case presents us with a unique set of facts that do not appear to have a remedy under this court's current case law, and I appreciate the majority's efforts to fashion such a remedy. While I fully acknowledge that the Alaska court's reasoning might not perfectly coincide with our jurisprudence on habeas-corpus relief, I simply believe the *Harvey* court's reasoning to be less in contravention of Arkansas jurisprudence than those decisions relied on by the majority. Here, the majority holds that Hobbs is Hundley's custodian because he is the person in whose custody Hundley is detained by virtue of the fact that he determines where Hundley is physically incarcerated; but, this reasoning could equally well apply to those Arkansas prisoners confined in-state because it is Hobbs who decides where all Arkansas inmates shall serve their sentences. *See* Ark. Code Ann. § 12-27-113 (Repl. 2009); *Stapleton*, 345 Ark. 500, 51 S.W.3d 862. My fear is that such an application could do away with our

long-standing precedent construing the custodian of the prisoner as "the person . . . having physical custody of the prisoner." *State Dep't of Pub. Welfare v. Lipe*, 257 Ark. 1015, 1017, 521 S.W.2d 526, 528 (1975).

To that end, I would apply the *Harvey* court's reasoning to habeas petitions filed by Arkansas prisoners confined outside the state under the ICC. In light of the fact that Hundley did not also direct his petition to the person having physical custody of him, the warden of the New Jersey correctional facility in which he is currently confined and an agent of Hobbs under the ICC and the contract between Arkansas and New Jersey, the circuit court would have been unable to issue a writ to effect Hundley's release, even if warranted. For this reason, I cannot say that the circuit court erred in dismissing his petition, and I respectfully dissent.

*Jeff Rosenzweig*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Rachel Kemp*, Ass't Att'y Gen., for appellee.