Submitted on February 14, 2012; appellant's motion to determine mootness filed February 28, motion to determine mootness granted; appeal dismissed as moot May 1, petition for review denied September 12, 2013 (354 Or 148)

JAMES DIMITRI DAVENPORT,
*Plaintiff-Appellant,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
09C24256; A145538

305 P3d 128

Erin K. Galli and Chilton & Galli, LLC, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Plaintiff, while he was an inmate at the Oregon State Penitentiary, sought habeas corpus relief on the ground that, by discontinuing his treatment with Ritalin, the state was deliberately indifferent to his serious medical condition, attention deficit hyperactivity disorder (ADHD).[1] The trial court granted the state's motion to dismiss, and plaintiff appealed. Since filing his appeal, plaintiff has been transferred to a correctional facility in Connecticut and will remain there for the foreseeable future. Because any decision by this court would have no practical effect on plaintiff's rights under the law, we dismiss plaintiff's appeal as moot.

The procedural facts are few and undisputed. After filing his appeal, plaintiff was transferred to a correctional facility in Connecticut. Plaintiff notified the court of the transfer, and the court requested that the parties submit additional information to determine whether plaintiff remains confined in a Connecticut correctional facility and likely will remain there for the foreseeable future, whether the state has retained control over the medical care that plaintiff receives in that correctional facility, and, generally, whether the case is moot. Plaintiff filed a motion to determine mootness, arguing that his transfer to Connecticut has not rendered the case moot. He is not receiving Ritalin in Connecticut, but believes that Connecticut prison officials allow some inmates, in limited situations, to receive the medication. The state did not file a response, but informed plaintiff's counsel that plaintiff "will likely remain[ ] confined in Connecticut for the foreseeable future" and that the state is "no longer taking any steps to control [plaintiff]'s medical treatment."

Plaintiff was transferred under an agreement between Oregon and Connecticut pursuant to the Interstate Corrections Compact. The agreement gives Oregon the right to review the transferred inmate's confinement to determine whether it is compatible with Oregon law:

---

[1] Defendant Premo is the Superintendent of the Oregon State Penitentiary, but, for clarity, we refer to defendant as "the state."

"2.  Governing Law

"Except where expressly otherwise provided, the laws and administrative regulations of the sending state shall govern the treatment and disposition of prisoners confined pursuant to this agreement and the Interstate Corrections Compact.

"* * * * *

"9.  Right of Inspection

"The sending state may inspect, at all reasonable times, any institution of the receiving state in which prisoners of the sending state are or may be confined, *to determine if that institution maintains standards of care and discipline not incompatible with those of the sending state*, and that all prisoners therein are treated equitably, regardless of race, religion, color, creed, national origin or physical disability."

(Underscoring in original; emphasis added.) The agreement also sets forth the standard of medical care that transferred inmates are to receive:

"15.  Responsibility for Offenders Custody

"It shall be the responsibility of the administration of the institution in the receiving state to confine inmates from a sending state:

"a)  [T]o give them care and treatment, including the furnishing of subsistence and all necessary medical and hospital services of a reasonable nature (as defined in Section 16)[.]

"* * * * *

"Nothing herein contained shall be construed to require the receiving state or any of its institutions to provide treatment, facilities, or programs for any prisoner confined pursuant to the Interstate Corrections Compact and this agreement *which it does not provide for similar prisoners not confined pursuant to said Compact*.

"16.  Medical Services

"(a)  The *receiving state will provide medical*, psychiatric and dental *care or treatment* as may be necessary to safeguard the health and well-being of prisoners from the sending state, in the same manner as such medical, psychiatric

and dental treatment *as is provided prisoners of the receiving state*, as part of normal maintenance and at no further cost to the sending state. Normal maintenance includes all medical, psychiatric and dental services which are provided at the institution."

(Underscoring in original; emphasis added.)

To summarize, under the agreement, Oregon has the right to inspect Connecticut's correctional facilities to ensure that they are "not incompatible" with the standards of care and discipline in Oregon, and Oregon's laws and administrative regulations generally govern Connecticut's treatment of its inmates confined in Connecticut unless otherwise provided for. Connecticut is responsible for providing medical care for out-of-state inmates and providing the medical care in the same manner as it is provided to its own inmates.

Plaintiff asserts that this appeal is not moot, despite plaintiff's transfer to Connecticut because, if he were to prevail, the state "would be ordered to rescind its prohibition on the use of Ritalin to treat plaintiff. That, in turn, could affect how appellant is treated by Connecticut." Plaintiff suggests that a "possible outcome" could be Connecticut changing its decision about how to treat plaintiff and providing him with Ritalin or returning him to Oregon.

A case is moot if the court's decision fails to have some practical effect on the rights of the parties to the controversy. *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993). However, "[e]ven if the main issue in a controversy has been resolved, collateral consequences may prevent the controversy from being moot under some circumstances." *Barnes v. Thompson*, 159 Or App 383, 386, 977 P2d 431, *rev den*, 329 Or 447 (1999) (emphasis omitted). We have found two cases addressing mootness after inmates filed habeas corpus petitions and were transferred to other correctional facilities. The two cases illustrate that the inmate has the burden to show that the court's action would have a practical effect despite the inmate's transfer.

In *Keenan v. Hall*, 202 Or App 571, 573, 123 P3d 812 (2005), *rev den*, 342 Or 253 (2006), the plaintiff petitioned for habeas corpus relief, alleging that the superintendent

of Two Rivers Correctional Institution (Two Rivers) was "indifferent to his medical needs." The trial court dismissed the writ as moot after the plaintiff was transferred from Two Rivers to another prison within Oregon. *Id.* at 574. We affirmed and held that, "[w]here [the] defendant supervised the institution to which a plaintiff was formerly confined, a court faced with a habeas corpus claim could not, by granting what is requested, secure for the transferred inmate improved medical treatment at plaintiff's new institution." *Id.* at 573, 575 (emphasis omitted). Even though the plaintiff maintained that his lack of medical care continued after the transfer, we stated that

> "no record evidence leads us to conclude that Two Rivers either directed or limited the medical care plaintiff received after his transfer back to Eastern Oregon. Absent such a showing, plaintiff's second argument provides this court with no reason to disturb the trial court's ruling that plaintiff's claim against Two Rivers was moot."

*Id.* at 576. Thus, because the plaintiff failed to show that the Two Rivers superintendent affected his medical care in the new prison, we affirmed the trial court's dismissal of the writ as moot. *Id.*

In another inmate transfer case, *Barrett v. Belleque*, 344 Or 91, 176 P3d 1272 (2008), the inmate defeated mootness by submitting evidence that the outcome of the case would affect his treatment in the new prison. In that case, the plaintiff, an Oregon inmate, filed a habeas corpus action claiming that he was entitled to a hearing before Oregon prison officials placed him in the Intensive Management Unit, a unit that deprives prisoners of certain privileges, such as telephone use, nonfamily visits, outdoor recreation, and classes. *Id.* at 93, 94. After the plaintiff filed his petition, Oregon officials transferred the plaintiff to an Oklahoma prison under the Interstate Corrections Compact, ORS 421.245. The state moved to dismiss the petition, arguing that the case was moot because "Oregon officials have given Oklahoma officials no guidance on how to treat the prisoner." 344 Or at 98. The plaintiff opposed the motion, submitting a declaration stating that he was housed in the functional equivalent of Oregon's Intensive Management Unit, and introduced letters from Oklahoma prison officials

saying that they would not change his security level without an approval from Oregon prison officials. *Id*. at 99-100.

The Supreme Court concluded that, based on the record before it, the case was not moot. *Id*. at 100-01. The court specifically pointed out that, although Oregon officials contended that they had not instructed Oklahoma on how the plaintiff should be treated, the plaintiff's declaration and letter from the Oklahoma officials indicated that, at least in part, Oklahoma prison officials would seek agreement from Oregon officials concerning the plaintiff's treatment in Oklahoma's prison system. *Id*. at 100. *Barrett* informs us that a transferred inmate filing a habeas claim against his previous superintendent may overcome mootness by submitting some evidence that the previous prison officials affect the inmate's treatment in the new prison.

Here, plaintiff has failed to present evidence that Oregon prison officials affect his treatment in Connecticut. The state told plaintiff's attorney that it is no longer taking any steps to control plaintiff's medical care while he is in Connecticut. And, unlike the inmate in *Barrett*, plaintiff has not produced evidence that the state's decision to withhold Ritalin has consequences for his treatment in Connecticut. Plaintiff has not been able to obtain any communication between Oregon and Connecticut prison officials other than the Interstate Corrections Compact. The text of that agreement contradicts plaintiff's position because it states that Connecticut will provide medical care or treatment "in the same manner" as such medical treatment "is provided prisoners of the receiving state," *i.e.*, Connecticut in this case. There is no evidence that Connecticut prison officials are deferring to Oregon prison officials. From the current record, it appears that plaintiff's medical care, including any Ritalin prescription and medication, will be provided by Connecticut as it sees fit, independent of what Oregon does. Therefore, we are compelled to hold that resolution of plaintiff's appeal would have no practical effect on his legal rights in Connecticut, and we dismiss it as moot.

Motion to determine mootness granted; appeal dismissed as moot.