Submitted September 5, 2014, reversed and remanded October 7, 2015, petition for review allowed February 1, 2016 (358 Or 550)

JACOB HENRY BARRETT,
*Plaintiff-Appellant,*

*v.*

Collette PETERS,
Director,
Oregon Department of Corrections,
*Defendant-Respondent.*

Marion County Circuit Court
13C20437; A155789

360 P3d 638

Jacob Henry Barrett filed the brief *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

LAGESEN, J.

**LAGESEN, J.**

Plaintiff is an inmate in the legal custody of the State of Oregon, serving a sentence imposed by a court of the State of Oregon, after plaintiff was convicted for violating the criminal laws of the State of Oregon. Plaintiff, however, is not incarcerated in Oregon; he is incarcerated in Florida pursuant to the Interstate Corrections Compact (ICC), ORS 421.245 to 421.254.[1] Plaintiff petitioned for a writ of habeas corpus in Oregon under ORS 34.310,[2] alleging (among other things) that his current conditions of confinement in Florida violate his rights under Article I, sections 2, 3, and 13, of the Oregon Constitution.[3] The trial court dismissed the petition with prejudice[4] on the grounds that defendant—the Director of the Oregon Department of Corrections (ODOC)—did not have *physical* custody of plaintiff (since plaintiff was located in Florida), and that plaintiff had not alleged facts showing that Oregon officials controlled plaintiff's conditions of

---

[1] The Legislative Assembly enacted into law the ICC, but did not legislatively add it to ORS chapter 421. Or Laws 1979, ch 486, § 1. The text of the ICC was compiled by Legislative Counsel in ORS 421.245. For ease of reference, throughout this opinion, we refer to the articles and sections contained in Oregon Laws 1979, chapter 486, section 1, which can be located in ORS 421.245.

[2] ORS 34.310 provides:

"The writ of habeas corpus ad subjiciendum is the writ designated in ORS 34.310 to 34.730, and every other writ of habeas corpus is abolished. Every person imprisoned or otherwise restrained of liberty, within this state, except in the cases specified in ORS 34.330, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom."

[3] Article I, section 2, of the Oregon Constitution provides:

"All men shall be secure in the Natural right, to worship Almighty God according to the dictates of their own consciences."

Article I, section 3, of the Oregon Constitution provides:

"No law shall in any case whatever control the free exercise, and enjoyment of religeous [sic] opinions, or interfere with the rights of conscience."

Article I, section 13, of the Oregon Constitution provides:

"No person arrested, or confined in jail, shall be treated with unnecessary rigor."

[4] The judgment is captioned "GENERAL JUDGMENT OF DISMISSAL WITHOUT PREJUDICE," but the body of the judgment reflects that the trial court dismissed plaintiff's petition "WITH PREJUDICE." Accordingly, we treat the trial court's judgment as a dismissal with prejudice. *See State v. Larrance*, 256 Or App 850, 851, 302 P3d 481 (2013) (treating body of judgment as controlling over conflicting caption).

confinement. On review for legal error, *Barrett v. Williams*, 247 Or App 309, 311, 270 P3d 285 (2011) (citing *Moser v. Mark*, 223 Or App 52, 54, 195 P3d 424 (2008)), we reverse, concluding that an Oregon inmate incarcerated out of state pursuant to the ICC retains the right to petition for a writ of habeas corpus in Oregon to remedy alleged unconstitutional conditions of confinement; and that plaintiff properly named the Director of the ODOC—which has legal custody of plaintiff—as the defendant on the petition.[5]

Oregon inmates have the right to be incarcerated under conditions that comply with state and federal constitutional standards. When alleged deprivations of state or federal constitutional rights are of the type that "would require immediate judicial scrutiny" and "it also appears to the court that no other timely remedy is available to the prisoner," Oregon inmates also have the right—by statute— to petition for a writ of habeas corpus to remedy the alleged deprivations of constitutional rights. *Penrod/Brown v. Cupp*, 283 Or 21, 28, 581 P2d 934 (1978); ORS 34.310; ORS 34.362.[6]

Oregon inmates do not always serve their sentences in Oregon facilities. As a result of the legislature's enactment of the ICC, some inmates serve their sentences in facilities in other states. However, an Oregon inmate housed in another state remains in the legal custody of Oregon. A state that houses an Oregon inmate pursuant to the ICC acts "solely as agent" of Oregon. ORS 421.245, ICC Art IV, § 1. The inmate remains "at all times * * * subject to the jurisdiction of" Oregon and "may at any time be removed

---

[5] We note that plaintiff also assigns error to the trial court's determination that the dismissal should be with prejudice. In response, the director concedes that the dismissal should have been without prejudice. Because we determine that the trial court erred by dismissing the petition, we do not address further petitioner's assignment of error regarding the "with prejudice" dismissal.

[6] ORS 34.362 provides, in relevant part:

"If the person is imprisoned or restrained by virtue of any order, judgment or process specified in ORS 34.330 and the person challenges the conditions of confinement or complains of a deprivation of rights while confined, the petition shall:

"* * * * *

"(2) State facts in support of a claim that the person is deprived of a constitutional right that requires immediate judicial attention and for which no other timely remedy is practicably available to the plaintiff."

[from the receiving state] for transfer to a prison or other institution within" Oregon or any other state with which Oregon has a contractual right to house inmates. *Id.* § 3. The inmate retains all rights that the inmate would have had if incarcerated in Oregon: "The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." *Id.* § 5. The inmate also retains all rights "to participate in *** any action or proceeding in which the inmate could have participated if confined in any appropriate institution of the sending state located within such state." *Id.* § 8.

As noted, plaintiff is an Oregon inmate who is incarcerated in Florida pursuant to the ICC. He filed a petition for habeas corpus in Oregon under ORS 34.310 and ORS 34.362, naming ODOC's director as the defendant. The petition alleges, in relevant part, that plaintiff's conditions of confinement in Florida violate plaintiff's rights under Article I, sections 2, 3, and 13, of the Oregon Constitution.[7] Specifically, the petition alleges that as part of Glefiosa—the religion to which plaintiff adheres—plaintiff is required to maintain a beard and a "Celtic tonsure" hairstyle. The hairstyle involves shaving most of the head except for the back, where the hair is grown long. Florida's prison grooming policy, however, prohibits beards and long hair. As a result, according to plaintiff's allegations, plaintiff has been forcibly shaved once a week or more "under the threat of adverse administrative action, as well as physical abuse." Plaintiff contends that the ban on his religious beard and hairstyle violates his Oregon constitutional right to the free exercise of religion under Article I, sections 2 and 3. Plaintiff also contends that the practice of forcibly shaving him violates his state constitutional right under Article I, section 13, to be free from "unnecessary rigor" in punishments. Plaintiff additionally alleges that his conditions of confinement

---

[7] The petition also alleges that plaintiff's transfer to Florida, in and of itself, violated his right to due process under the Fourteenth Amendment. The trial court ruled that that allegation did not provide a basis for habeas relief in light of the Supreme Court's recognition in *Olim v. Wakinekona*, 461 US 238, 103 S Ct 1741, 75 L Ed 2d 813 (1983), that due process does not afford an inmate the right to be incarcerated in a particular place. On appeal, plaintiff does not contest that ruling, and we do not address it.

violate the federal Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 USC §§ 2000cc - 2000cc-5.

The trial court issued a show cause order inquiring why the petition should not be allowed, and the director responded by moving to deny the petition. In the motion, the director did not contest that plaintiff had alleged facts sufficient to show his conditions of confinement violated his rights under the Oregon Constitution. That is, the director did not argue that Article I, sections 2 and 3, did not protect plaintiff's right to have a beard and a Celtic tonsure hairstyle, or argue that the forcible shavings comported with Article I, section 13. The director also did not argue that the alleged constitutional violations were not the type that required "immediate judicial scrutiny" or that plaintiff had other adequate remedies available. Instead, she argued that the petition did not "state a claim" for habeas relief because, in her view, she was not a "proper defendant" because she did not have physical custody of plaintiff, and because she was "not responsible for the alleged actions of Florida." The trial court agreed with the director and dismissed the petition with prejudice. Plaintiff appeals.

On appeal, the director again does not contest that the petition sufficiently alleges violations of plaintiff's right to the free exercise of religion under Article I, sections 2 and 3, or a violation of plaintiff's right to be free from "unnecessary rigor" under Article I, section 13.[8] Instead, the director argues that, under the ICC, plaintiff is not entitled "to the same religion-based hairstyle in out-of-state correctional facilities that he argues he would be allowed in Oregon," and that any challenge to his conditions of confinement "should be addressed to officials and courts in that state." Accordingly, in light of how the parties have framed the case on appeal, the questions for us are the following: Did plaintiff's transfer to Florida deprive him of the right to be incarcerated under conditions that meet Oregon Constitutional

---

[8] We focus on plaintiff's claims under the Oregon Constitution because, although the director has not raised the issue, we have questions regarding whether the alleged RLUIPA violation may be addressed in a habeas corpus proceeding. By its terms, ORS 34.362 permits an inmate to seek a writ of habeas corpus to redress deprivations of constitutional rights. ORS 34.362(2). It does not, by its terms, provide a remedy for violations of statutory rights.

standards? If not, may plaintiff seek to remedy any constitutional deficiency in his conditions of confinement by petitioning for habeas corpus relief in Oregon? If he may seek habeas corpus relief in Oregon, has plaintiff alleged facts sufficient to show that the director is a proper defendant?

The easy answer to the first question is no. The ICC states, unequivocally, that "[t]he fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." ORS 421.245, ICC Art IV, § 5. That means that, if the Oregon Constitution affords an Oregon inmate the right to certain conditions of confinement, then the inmate does not lose those rights by virtue of a transfer to a state that does not recognize the same rights. Thus, for example, if the Oregon Constitution protects plaintiff's right to a religious-based beard and hairstyle—and, at this point in time, the director has not disputed that it does—plaintiff still has that right, even though he is incarcerated in Florida. To hold otherwise would, in effect, convert the ICC into a mechanism for subverting the requirements of our own constitution, enabling Oregon officials to transfer Oregon inmates out of state to avoid complying with the legal standards for confinement set by the Oregon Constitution.[9]

In arguing for a contrary rule, the director relies on a number of cases holding that an inmate transferred under the ICC is subject to the rules and disciplinary authority of the receiving state, and is not entitled to application of the sending state's institutional policies: *Daye v. State*, 769 A2d 630 (Vt 2000); *Glick v. Holden*, 889 P2d 1389 (Utah 1995); *Stewart v. McManus*, 924 F2d 138 (8th Cir 1991); *Garcia v. Lemaster*, 439 F3d 1215 (10th Cir 2006); and *Abrazinski v. DuBois*, 876 F Supp 313 (D Mass 1995). Those cases all stand for the same general proposition that the *ICC* does not obligate a *receiving state* to provide a transferred inmate the exact same treatment that the inmate would receive in the sending state and, that the *ICC* does not entitle a transferred

---

[9] To be clear, there is no indication that Oregon officials, in fact, transferred plaintiff to Florida for the purpose of undermining plaintiff's Oregon constitutional rights.

inmate to the application of the sending state's *institutional policies*. That proposition is unobjectionable, and is consistent with the plain terms of the ICC, which obligate a receiving state to treat transferred inmates humanely and in the same way that the receiving state treats its own inmates: "All inmates who may be confined in an institution pursuant to the [ICC] shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution." ORS 421.245, ICC Art IV, § 5; *see, e.g., Abrazinski,* 876 F Supp at 317. However, the issue in this case is not whether the *ICC* required *Florida* to adhere to Oregon's policies or to comply with Oregon's constitutional standards; the issue is whether *plaintiff lost the right* to be incarcerated under conditions that comply with Oregon *constitutional* standards, by virtue of his transfer to Florida. The cases cited by the director have no bearing on that point. The terms of the ICC do: "The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." ORS 421.245, ICC Art IV, § 5.

The second question—whether plaintiff may seek habeas corpus relief in Oregon to remedy his confinement under conditions alleged to violate Oregon constitutional standards—also is answered by the terms of the ICC, as well as by the Supreme Court's decision in *Barrett v. Belleque,* 344 Or 91, 176 P3d 1272 (2008). In *Barrett,* the Supreme Court acknowledged that the habeas corpus statute, ORS 34.310, by its terms, applies only to inmates incarcerated "'within this state,'" and that, ordinarily, an Oregon court would lack jurisdiction over a habeas petition filed by an inmate who was incarcerated outside of Oregon. 344 Or at 100 (quoting ORS 34.310 (emphasis in *Barrett* omitted)). The court determined, however, that "[t]he terms of the ICC * * * supplement the ordinary habeas jurisdictional analysis." *Id.* If "[p]etitioner committed his crimes in Oregon, was convicted and sentenced in Oregon, and is serving an 'Oregon' sentence * * * [he] cannot be deprived of any legal rights that he would have enjoyed in Oregon." *Id.* (citing ORS 421.245, ICC Art IV, § 5). Accordingly, under *Barrett,* one of those

legal rights that an Oregon inmate retains is the right to petition for a writ of habeas corpus in Oregon. *Id.*

The final question is whether the director is a proper defendant on the petition. Under the habeas corpus statutes, the proper defendant on a petition for a writ of habeas corpus is the plaintiff's custodian; that is, the "officer or person by whom the party is imprisoned or restrained." ORS 34.360(1); ORS 34.362(1) (requiring that a petition challenging conditions of confinement comply with ORS 34.360(1)); *see also* ORS 34.430(1) (providing that it is "sufficient" if the writ designates "the officer or person having the custody of the person imprisoned or restrained" by name, office, or description). Here, plaintiff has sufficiently alleged facts showing that the director is "the officer or person by whom" he is restrained. Plaintiff has alleged that, although housed in Florida pursuant to the ICC, he remains in ODOC custody. He has further alleged that the director is the Oregon official "responsible in every particular for the enforcement of the ICC." Those allegations are sufficient to demonstrate that the director is the person or officer who is plaintiff's legal custodian. More pertinently, those allegations are sufficient to show that, were the writ to issue, and to order the production of plaintiff in an Oregon court or the removal of plaintiff from any unconstitutional conditions of confinement, the director, as the official charged with implementing the ICC, would be in a position to comply by directing plaintiff's return to Oregon. *See* ORS 421.245, ICC Art IV, §§ 1, 3 (providing that the receiving state acts "solely as agent" for the sending state, that the sending state retains jurisdiction over the inmate, and that the inmate may be returned to the home state).

The director does not dispute that she has the authority to direct plaintiff's removal from Florida, or argue that she could not comply with a writ of habeas corpus directing her to produce plaintiff in Oregon, or to remove plaintiff from Florida, were a court to conclude that plaintiff's conditions of confinement do not meet Oregon constitutional standards. She nonetheless argues that she is not a proper defendant for two reasons: (1) she is not plaintiff's *physical* custodian; and (2) she does not control plaintiff's day-to-day

conditions of confinement in Florida. For the reasons that follow, neither argument persuades us that the director is not the proper defendant on plaintiff's petition for habeas corpus relief.

As to whether the director's lack of physical custody of defendant means that she is not the proper defendant, we acknowledge that "ordinarily, [a petition for habeas corpus] must be against one having physical custody of the plaintiff." *Anderson v. Britton,* 212 Or 1, 5, 318 P2d 291 (1957). However, that rule is not hard and fast. The habeas statutes do not by their terms require that a plaintiff name his or her *physical* custodian; ORS 34.360(1) and ORS 34.362(1) simply require the plaintiff to identify the person or officer "by whom the party is imprisoned or restrained." Where, as here, an inmate is in the legal custody of Oregon, but in the physical custody of another state, that descriptor applies to more than one person: the plaintiff's legal custodian and the plaintiff's physical custodian.

Moreover, a defendant's lack of physical custody of a plaintiff does not defeat a petition for a writ of habeas corpus if the circumstances indicate that the defendant has legal or constructive custody of the plaintiff, both under Oregon law and as a matter of the common law of habeas corpus. For example, in *Anderson,* the Supreme Court concluded that the plaintiff's transfer out of the custody of the sheriff into the custody of the state penitentiary did not moot an appeal in a habeas case because, by statute, the plaintiff "remain[ed] constructively in the custody of the sheriff pending determination of the appeal." 212 Or at 6.

*Anderson*'s approach is consistent with the common law of habeas corpus. *See Penrod/Brown,* 283 Or at 24-28 (considering the "historic function" of habeas corpus to delineate the types of available relief). Since its inception, the writ has been directed at "a person detaining another, commanding him to produce the body of the person detained." William S. Church, *A Treatise on the Writ of Habeas Corpus* § 87, 137 (2d ed 1893). Therefore, the proper party is an individual who has the power to "bring [the detainee] before the judge to explain and justify, if he could, the fact of imprisonment." *Id.* § 88 at 140. Usually, that party would also have physical

custody over the detained person; however, sometimes "the person against whom the application for the writ is made has handed over the person detained" to a third party. *Id.* § 109 at 170. In this instance, "the writ of habeas corpus ought to [still] issue against him, and that if it be possible for him to produce the person detained, he must do so." *Id.*; *see also* Paul D. Halliday, *Habeas Corpus: From England to Empire* 42-43 (2010) (identifying circumstances at common law in which an inmate's legal, rather than physical, custodian was the proper party to whom a writ of habeas corpus should be directed).[10]

Based on the foregoing authorities, we are persuaded that plaintiff properly named the director as the defendant on his petition for a writ of habeas corpus, notwithstanding the fact that the director does not have physical custody of plaintiff. Here, according to the allegations in the petition, ODOC has transferred plaintiff, pursuant to the ICC, to the physical custody of the Florida Department of Corrections, while retaining legal custody over him. Under the ICC, Oregon officials have the authority to bring plaintiff before a judge in an Oregon court. ORS 421.245, ICC Art IV, §§ 1, 3. Under those circumstances, plaintiff properly directed the petition at the director.[11]

We turn to the director's alternative argument that her lack of control over plaintiff's conditions of confinement in Florida means that she is not the proper defendant on plaintiff's petition. In support of that argument, the director relies primarily on *Barrett* and our decision in *Davenport*

---

[10] According to Halliday, the rationale behind the direction of the writ "lay in a personal relationship: that between the [sovereign] and his franchisee." Halliday, *Habeas Corpus: From England to Empire* at 42. As a result, "[p]eople, not places, were the objects of the writ's supervision." *Id.* at 43. For example, at the Bocardo Prison in Oxford, built in the 11th or 12th century, the King of England authorized various government officers to imprison and release inmates. *Id.* Directing a habeas petition to the jailor, when another government official had legal custody over the prisoner, would result in failure for misdirection. *Id.* (citing case law from the early 1600s).

[11] The Supreme Court of Arkansas recently reached the same conclusion. *Hundley v. Hobbs*, 456 SW 3d 755 (Ark 2015) (holding that Arkansas inmate incarcerated in New Jersey pursuant to the ICC was entitled to petition for habeas corpus relief in Arkansas, and properly directed the petition against the director of the Arkansas department of corrections). In reaching that conclusion, the court relied heavily on *Barrett. Hundley*, 456 SW 3d at 758.

*v. Premo*, 256 Or App 486, 305 P3d 128 (2013). Below, the director also relied heavily on *Garcia*, a federal circuit court case. For the reasons explained below, we conclude that those authorities do not demonstrate that plaintiff was required to allege or otherwise demonstrate that the director controlled his conditions of confinement in Florida.

The director argues that *Barrett* and *Davenport* stand for the proposition that an inmate incarcerated out of state pursuant to the ICC must demonstrate that Oregon officials control the inmate's conditions of confinement in order to seek a writ of habeas corpus directed to an Oregon official. Neither of those cases stands for that proposition. Both involved petitions for habeas corpus relief filed by inmates who were incarcerated in Oregon at the time that they filed their petitions, but were then transferred to facilities out of the state pursuant to the ICC. *Barrett*, 344 Or at 93-94, 98-101; *Davenport*, 256 Or App at 488. Because those transfers had the effect of removing the inmates from the institutional conditions challenged in their respective habeas petitions, the Supreme Court in *Barrett*, and we, in *Davenport*, considered whether the transfers rendered the proceedings moot. In *Barrett*, the court concluded that the plaintiff's transfer did not moot his challenge to confinement in the Intensive Management Unit, in light of evidence that the plaintiff, notwithstanding the transfer, continued to be housed in a similar unit at the direction of Oregon officials. 344 Or at 100-01. By contrast, in *Davenport*, we concluded that the plaintiff's transfer mooted his challenge to the level of medical care that he had been receiving in Oregon because there was no evidence that "Oregon prison officials affect his treatment in Connecticut," and, thus, no basis to conclude that resolution of the plaintiff's challenge to the level of treatment that he had been receiving in Oregon would have any practical effect on his rights. 256 Or App at 492.

Thus, in each case, the court examined whether Oregon officials exerted control over the plaintiff's confinement in the receiving state for the express purpose of assessing whether resolution of the plaintiff's challenge to conditions in which *he was no longer confined* could have a practical effect on the plaintiff's rights, thereby preventing

the case from going moot. Neither court suggested that a plaintiff presently confined outside of the state under conditions alleged to violate Oregon constitutional standards must demonstrate that Oregon officials control those conditions in order to seek a writ of habeas corpus directing the plaintiff's Oregon legal custodian to remove the inmate from those conditions.

Below, the director also relied heavily on the Tenth Circuit's decision in *Garcia* in support of her argument that plaintiff was required to demonstrate that defendant controlled his conditions of confinement in Florida. That case also is not helpful to the director. It involved an action under 42 USC section 1983 seeking to hold the defendants liable for damages (among other things), and section 1983 is a federal statutory remedy that is fundamentally different from the habeas corpus remedy authorized under ORS 34.310. In *Garcia*, the court considered whether an inmate who alleged that his conditions of confinement in the receiving state violated his federal constitutional rights stated a claim under section 1983 against the sending-state officials. 439 F3d at 1216-18. The court concluded that he had not stated a claim because the inmate's claims challenged actions by the receiving-state officials, and the sending-state officials had "no say" in the inmate's conditions of confinement in the receiving state, and no ability to "take any affirmative action with respect to conditions of confinement." *Id.* at 1217.

We do not necessarily disagree with the *Garcia* court's approach to the section 1983 claim at issue in that case, from what we can discern about that claim from the court's opinion. For an individual defendant to be liable under section 1983, the defendant must have participated personally in the alleged violation or violations of the plaintiff's constitutional rights. *See Ashcroft v. Iqbal*, 556 US 662, 676, 129 S Ct 1937, 173 L Ed 2d 868 (2009) (to state a claim against an individual government official under section 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Thus, absent allegations that the sending-state officials personally participated in the alleged constitutional violations by receiving-state officials,

the plaintiff in *Garcia* could not state a claim against the sending-state officials under section 1983.

By contrast, in a habeas corpus proceeding under ORS 34.310, the plaintiff is not seeking to impose liability on the defendant for a violation of the plaintiff's constitutional rights. Rather, the plaintiff is seeking to be removed from confinement that is unconstitutional, either because the conditions are unconstitutional or because the confinement itself is unconstitutional. A person need not have personally participated in the alleged unconstitutional conditions or circumstances from which the plaintiff seeks to be relieved in order to have the necessary authority to comply with any writ of habeas corpus that might issue. As explained above, that necessary authority stems from the person's custodial relationship with the plaintiff, not from the person's participation in, or control over, the plaintiff's day-to-day conditions of confinement.

In short, we conclude that (1) plaintiff did not lose the right to be incarcerated under conditions that comply with the Oregon Constitution by virtue of his transfer to Florida pursuant to the ICC; (2) plaintiff did not lose the right to petition for habeas corpus relief in Oregon by virtue of his transfer to Florida pursuant to the ICC; and (3) plaintiff alleged sufficient facts to establish that he properly named the director as the defendant in this habeas corpus proceeding. The trial court erroneously dismissed the petition based on its contrary conclusion. We therefore reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.