No. 66            October 20, 2016            445

IN THE SUPREME COURT OF THE
STATE OF OREGON

JACOB HENRY BARRETT,
*Respondent on Review,*

*v.*

Colette PETERS,
Director,
Oregon Department of Corrections,
*Petitioner on Review.*

(CC 13C20437; CA A155789; SC S063743 (Control))

JACOB HENRY BARRETT,
*Respondent on Review,*

*v.*

Colette PETERS,
Director,
Oregon Department of Corrections,
*Petitioner on Review,*

*and*

Greg JONES,
Karin Potts, and Jana Russell,
*Defendants.*

(CC 13C23141; CA A156271; SC S063744)

En Banc

On review from the Court of Appeals.*

Argued and submitted June 14, 2016.

Jona J. Maukonen, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Nadia H. Dahab, Stoll Stoll Berne Lokting & Shlachter, P.C., Portland, argued the cause and filed the brief for respondent on review.

_____
    * Appeal from Marion County Circuit Court, Courtland Geyer, Judge. 274 Or App 237, 360 P3d 638 (2015); 274 Or App 251, 360 P3d 646 (2015).

WALTERS, J.

The decisions of the Court of Appeals are affirmed. The judgments of the circuit court are reversed, and the cases are remanded to the circuit court for further proceedings.

**WALTERS, J.**

Petitioner is an inmate who committed aggravated murder in Oregon and who was convicted, sentenced, and incarcerated in Oregon; however, pursuant to the Interstate Corrections Compact (ICC), ORS 421.245, Oregon transferred petitioner to an institution in the state of Florida. Thereafter, petitioner filed, in Oregon, two separate petitions for writ of habeas corpus alleging, among other things, that the terms of his confinement in Florida violate his rights under the state and federal constitutions. We conclude, as did the Court of Appeals, that petitioner's transfer to and confinement in Florida do not prohibit him from bringing those constitutional claims. We affirm the decisions of the Court of Appeals. *Barrett v. Peters*, 274 Or App 237, 250, 360 P3d 638 (2015); *Barrett v. Peters*, 274 Or App 251, 254, 360 P3d 646 (2015). We reverse the contrary judgments of the circuit court.

## I.   BACKGROUND

Petitioner committed aggravated murder in Oregon and was convicted and sentenced to life in prison. Oregon transferred petitioner to the state of Florida pursuant to the ICC, ORS 421.245, and petitioner later filed two petitions for writ of habeas corpus in Oregon pursuant to ORS 34.310 and ORS 34.362, naming the Director of the Oregon Department of Corrections (ODOC) as defendant. In his first habeas petition, petitioner alleged that the terms and conditions of his confinement in Florida violate his rights under the Oregon Constitution, specifically, his rights under Article I, sections 2, 3, and 13, to the free exercise of religion and to be free from "unnecessary rigor." Petitioner also alleged that he had "made defendant aware of the denial of the right of free exercise" and had filed a formal grievance with ODOC, which it had denied. In addition, petitioner alleged that the conditions of his confinement violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[1]

---

[1] Petitioner also alleged other violations that we do not address. First, petitioner alleged that the lack of pretransfer notice and a hearing before ODOC violated his right to due process of law under the federal constitution. The trial court concluded that that claim was meritless, and petitioner did not assign that ruling as error in the Court of Appeals or raise it on review. We therefore do not address

In his second habeas petition, petitioner alleged that, by transferring him to and confining him in the State of Florida, defendant had denied him "timely and meaningful rehabilitative treatment and programming" in violation of the Eighth and Fourteenth Amendments to the United States Constitution, as well as his Oregon constitutional right to be free from "unnecessary rigor." Petitioner asserted that defendant "was in a position of authority," "opted to take no action" in response to his requests to transfer, and "knew or should have known" that petitioner was being confined in violation of his constitutional rights.

Before the trial court, defendant[2] moved to "deny" petitioner's first habeas petition for failure to state a claim. ORS 34.370. The state argued that the director was not a proper defendant because she did not have physical custody of petitioner and because she did not control the conditions of confinement in Florida. The trial court agreed with the state and dismissed petitioner's first habeas petition with prejudice. Subsequently, the trial court, acting *sua sponte*, dismissed petitioner's second petition for the same reasons that it had dismissed petitioner's first petition.

Petitioner appealed to the Court of Appeals, and that court reversed both trial court decisions. *Barrett v. Peters*, 274 Or App 237 at 250; *Barrett v. Peters*, 274 Or App 251 at 254. In its decision as to petitioner's first petition, the Court of Appeals held that an Oregon inmate incarcerated out of state pursuant to the ICC retains the right to petition for a writ of habeas corpus in Oregon to remedy alleged unconstitutional conditions of confinement and that petitioner had properly named the Director of ODOC as defendant. *Barrett v. Peters*, 274 Or App 237 at 247. In reaching that conclusion, the court relied on this court's decision in *Barrett v. Belleque*, 344 Or 91, 100, 176 P3d 1272 (2008),[3] that

---

it. Second, petitioner alleged that the terms and conditions of his confinement violate the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 USC sections 2000cc to 2000cc-5. We do not address that violation, because the state did not separately challenge it in the trial court or the Court of Appeals.

[2] Throughout the remainder of this opinion, we will refer to defendant, the Director of the ODOC, as "the state."

[3] The petitioner in this case was also the petitioner in *Barrett v. Belleque*, but the cases are not related. We will refer to that case as *Barrett v. Belleque* throughout this opinion.

"'[t]he terms of the ICC * * * supplement the ordinary habeas jurisdictional analysis.'" *Barrett v. Peters*, 274 Or App 237 at 244. In the case involving petitioner's second petition, the Court of Appeals relied on its decision involving petitioner's first petition and again reversed the trial court judgment. *Barrett v. Peters*, 274 Or App 251 at 254.

The state sought review of both cases in this court, raising three issues: (1) whether Oregon law permits an inmate confined outside of Oregon pursuant to the ICC to file a petition for a writ of habeas corpus in Oregon; (2) whether petitioner alleged cognizable habeas corpus claims in contesting the conditions of his confinement in Florida; and (3) whether petitioner properly named the Director of ODOC as defendant in these cases. This court granted review and consolidated the two cases.

## II.   ANALYSIS

We begin with the first question on review, which is, as noted, whether inmates incarcerated outside of Oregon as the result of transfer under the ICC, ORS 421.245, are entitled to seek a writ of habeas corpus under ORS 34.310. For the reasons that follow, we conclude that they are.

### A.   *Oregon law permits petitioner to bring a claim for habeas relief.*

Under the habeas statutes, when an inmate alleges deprivations of state or federal constitutional rights that are of the type that "would require immediate judicial scrutiny," and "it also appears to the court that no other timely remedy is available to the prisoner," the inmate has the right to petition for a writ of habeas corpus to remedy the alleged deprivations. *Penrod/Brown v. Cupp*, 283 Or 21, 28, 581 P2d 934 (1978); ORS 34.310; ORS 34.362. ORS 34.310 provides, in part:

> "Every person imprisoned or otherwise restrained of liberty, within this state, * * * may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom."

The state argues from the text of that statute that, to qualify for habeas relief, a person must be confined within

Oregon's geographic boundaries. The state contends that the phrase "within this state" is a reference to Oregon's geographic boundaries. The "within this state" requirement for habeas relief was part of the Oregon session laws enacted in 1862, General Statutes of Oregon, chapter VII, title III, section 597, page 152 (1862), and was later included in the Deady Code, General Laws of Oregon, Civil Code, chapter VII, title III, section 597, page 300 (Deady 1945-1864). The state contends that, when the legislature enacted those laws, "within" was defined as "[i]n the inner part, as the space *within* the walls of a house," and as "[i]n the limits or compass of; not beyond; used of place and time." Noah Webster, 2 *An American Dictionary of the English Language* 114 (1828). Therefore, the state argues, when the legislature originally drafted the "within this state" requirement, it would have understood that phrase to mean inside the geographic boundaries of the State of Oregon.

Petitioner does not contend otherwise. Rather, petitioner contends that he is entitled to seek habeas relief for two alternative reasons: First, because the "restraint" to which ORS 34.310 refers includes constructive restraint; and second, because the ICC supplements the habeas statutes and preserves petitioner's right to participate in any proceedings in which he could have participated if he were incarcerated in Oregon, including habeas proceedings. We find petitioner's second, alternative argument persuasive for the following reasons.

The ICC permits the transfer of Oregon inmates to states and territories that are parties to that compact and specifically addresses the rights of transferred inmates. Article IV, section 5, of the ICC provides that "[t]he fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights" that the inmate would have had if confined within the sending state.[4] Article IV, section 8, grants a transferred inmate the right to participate in any action or proceeding in which the inmate could have participated if confined in the sending state. It provides that

---

[4] The "[r]eceiving state" is the "state party to [the ICC] to which an inmate is sent for confinement other than a state in which conviction * * * was had." ORS 421.245, Art II, § 3. The "[s]ending state" is the "state party to [the ICC] in which conviction * * * was had." *Id*. at § 2.

"[a]ny inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or the status of the inmate changed on account of any action or proceeding in which the inmate could have participated if confined in any appropriate institution of the sending state located within such state."

ORS 421.245, Art IV, § 8. In *Barrett v. Belleque*, this court construed those two provisions of the ICC as "supplement[ing] the ordinary habeas jurisdictional analysis." 344 Or at 100.

The petitioner in *Barrett v. Belleque* was imprisoned in Oregon when he filed his claim for habeas relief. *Id.* at 93. The trial court reached the merits of the petitioner's claim and denied it. *Id.* The Court of Appeals affirmed. *Id.* The petitioner then sought review in this court, but, before the court could act, the state transferred the petitioner to an Oklahoma prison under the ICC. *Id.* The state moved to dismiss review on the grounds that the matter had become moot. The state argued that neither the petitioner nor his custodian was "within this state," as ORS 34.310 requires; they were, the state asserted, "in Oklahoma." *Id.* at 100. This court concluded that the case was not moot and reached the merits of the petitioner's claims, "to the extent that they *** affect[ed] his current incarceration in Oklahoma." *Id.* at 101. The court reasoned as follows:

"The terms of the ICC, however, supplement the ordinary habeas jurisdictional analysis. Petitioner committed his crimes in Oregon, was convicted and sentenced in Oregon, and is serving an 'Oregon' sentence. Under the ICC, petitioner cannot be deprived of any legal rights that he would have enjoyed in Oregon. *See* ORS 421.24[5], Art IV(5) (so stating)."

*Id.* at 100.

The state argues that our decision in *Barrett v. Belleque* turned not on an interpretation of the habeas statute, ORS 34.310, or on an interpretation of the ICC, ORS 421.245, but on the well-settled principle, articulated in *Anderson v. Britton*, that "the function of habeas corpus

cannot be defeated by a transfer of custody after a ruling in the trial court and pending appeal to [the supreme court]." 212 Or 1, 5, 318 P2d 291 (1957), *superseded by statute on other grounds as explained in Delaney v. Gladden*, 232 Or 306, 374 P2d 746 (1962). But this court did not cite *Anderson* in *Barrett v. Belleque*, and for good reason. In *Anderson*, the petitioner had been transferred, not out of state, but from the county jail to the state penitentiary. Thus, the court in *Anderson* was not required to confront the issue presented in *Barrett v. Belleque* and the state's very different argument there that petitioner's claim was moot because he was not longer "within the state," as ORS 34.310 requires. In *Barrett v. Belleque*, this court held, as a necessary response to that argument, that the ICC supplements ORS 34.310 and permits out of state prisoners to challenge the terms of their confinement by means of a habeas corpus proceeding.

*Barrett v. Belleque* is precedent that we are required to follow, and we therefore conclude that petitioner is permitted to challenge the terms and conditions of his confinement in Florida in this action.

B.   *Petitioner alleged cognizable violations of the Oregon Constitution.*

The next question that the state poses is whether petitioner brings a cognizable habeas claim for violation of his rights under the state and federal constitutions by alleging that the terms and conditions of his confinement in Florida are unconstitutional. To state a claim for habeas corpus, a petitioner must plead

> "facts in support of a claim that the person is deprived of a constitutional right that requires immediate judicial attention and for which no other timely remedy is practicably available to the plaintiff."

ORS 34.362. The state argues that petitioner's allegations are legally insufficient for three interrelated reasons: (1) Even if the ICC supplements habeas corpus jurisdiction and permits inmates who are not confined "within this state" to bring a habeas claim, the ICC does not grant inmates the right to challenge conditions of confinement

in a receiving state because those conditions do not meet the standards of sending states—instead, the ICC grants receiving states the right to set conditions of confinement that they determine are appropriate and requires that all inmates be treated equally according to those conditions; (2) even if the ICC grants inmates the right to challenge the conditions of confinement imposed by receiving states, that right is a statutory right and not a constitutional right; and (3) the Oregon Constitution does not apply in receiving states, and conditions of confinement imposed by receiving states are not the result of Oregon state action.

The state draws its arguments from the ICC, particularly ORS 421.245, Article IV, section 5. The first sentence of section 5 provides:

> "All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution."

The second sentence provides:

> "The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state."

According to the state, the first sentence of section 5 makes inmates transferred under the ICC subject to the rules and disciplinary authority of the receiving state; the second governs other rights that an inmate may have—for example, rights related to the validity of the inmate's conviction, the length of a sentence, good-time credits, and parole. In support of that interpretation, the state cites cases in which courts have held that the ICC does not grant inmates the right to application of the sending state's disciplinary, visitation, classification, and grooming policies. *See Vigue v. Underwood*, 139 SW3d 168, 171-72 (Ky Ct App 2004) (concluding that ICC does not require application of disciplinary rules of sending state); *Daye v. State*, 171 Vt 475, 481-82, 769 A2d 630 (2000) (same); *Glick v. Holden*, 889 P2d 1389, 1392-93 (Utah Ct App 1995) (same).

We need not decide, in this case, whether we agree with those holdings. In this case, petitioner does not allege that he is entitled to have the state of Florida apply Oregon disciplinary rules or policies; rather, he alleges that the conditions under which he is confined in Florida violate his rights under the state and federal constitutions. As the Court of Appeals correctly explained in its opinion regarding petitioner's first petition, "the issue in this case is not whether the ICC require[s] [the receiving state] to adhere to Oregon's policies or to comply with Oregon's constitutional standards; the issue is whether [*petitioner*] *lost the right* to be incarcerated under conditions that comply with Oregon *constitutional* standards, by virtue of his transfer to [the receiving state]." *Barrett v. Peters*, 274 Or App 237 at 244 (emphasis in original). The answer to that question is "no." The second sentence of ORS 421.245, Article IV, section 5, specifically provides that the fact of confinement in a receiving state "shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." Even if that sentence does not grant an inmate the right to have particular administrative rules of the sending state apply in the receiving state, it at least guarantees that the transferred inmate will retain, and not lose, constitutional rights. *See Johnson v. State*, 442 A2d 1362, 1367 (Del 1982) ("a legitimate and reasonable basis for transferring an inmate does not justify the denial to him of an opportunity to exercise a constitutional right"); *In re Sheryl S.*, 1991 WL 61396, at *2 (Conn Super Ct Apr 12, 1991) (transferred inmate retains constitutional right to be present at hearings on petition of juvenile neglect).

That the Oregon legislature did not intend the ICC to deprive transferred inmates of their constitutional rights is a proposition supported not only by the text of that statute, but also by its legislative history. *See [State v. Gaines](#)*, 346 Or 160, 171, 206 P3d 1042 (2009) (holding legislative intent is interpreted by examining text, context, and any helpful legislative history). When the ICC was before the House Judiciary Committee in 1979, Representative Lombard asked Committee Counsel whether, in the event that the sending state had a provision or legal right that

the receiving state did not have, the receiving state would be required to provide those rights to transferred inmates. Tape Recording, House Committee on Judiciary, HB 2070, Feb 2, 1979, Tape 6, Side 1 (comments of Rep Kip Lombard). Committee Counsel responded that the "bill states that they maintain their legal rights." *Id*. (comments of Dennis Bromka). Later, Chairman Gardner asked a representative of the Oregon Corrections Division whether correctional facilities would scrutinize the prisoners to be exchanged to avoid conflicts between the rules of the sending and receiving states. *Id*. (comments of Chairman James Gardner). The Corrections representative responded that they would and added that "the key thing to remember" was that "most of these transfers are voluntary in nature and most of the prisoners want to be closer to their families." *Id*. (comments of Thomas Toombs). It does not appear that the legislature intended that inmates transferred under the ICC would be required to endure treatment that violated the Oregon Constitution.

Thus, even if the ICC does not *grant* a transferred inmate the right to conditions of confinement that accord with Oregon statutory or administrative standards, a question that we do not decide, the ICC does not *deprive* a transferred inmate of the right to conditions of confinement that accord with constitutional requirements. Relatedly, the fact that the ICC permits a transferred inmate to challenge the violation of constitutional rights does not make an inmate's constitutional challenge a statutory claim.[5] We conclude that a transferred inmate retains the right to challenge unconstitutional conditions in a habeas proceeding, and we reject the state's argument that such a right is a statutory right.

We turn next to the state's arguments that the Oregon Constitution does not apply outside of Oregon and that the conditions of confinement imposed by Florida officials do not constitute Oregon state action. Those arguments indicate a misunderstanding of the nature of petitioner's

---

[5] Although, as the Court of Appeals noted, petitioner's claim that the terms and conditions of his confinement violate RLUIPA may be a statutory claim, *Barrett v. Peters*, 274 Or App 237 at 242 n 8, we do not address that question. The state did not raise it in the trial court or in the Court of Appeals. *Id*.

claims. Petitioner alleges state action by Oregon officials in Oregon; he alleges that the state continues to confine petitioner in Florida with knowledge of the terms and conditions of his confinement there. Even if the Oregon Constitution does not apply in Florida, and even if Oregon has no direct control over the conditions of petitioner's confinement in Florida, the Oregon Constitution does apply in Oregon and Oregon has direct control over petitioner's placement in a Florida facility.[6] ORS 421.245, Article IV, section 3, provides that inmates transferred under ICC "shall at all time be subject to the jurisdiction of the sending state and may at any time be removed therefrom." If Oregon officials are knowingly confining petitioner in a facility where his state or federal constitutional rights are being violated, those officials are engaging in state action that is subject to challenge in a habeas proceeding in Oregon.

---

[6] Petitioner also argues that the Oregon Constitution applies to Florida officials who act as agents of the State of Oregon in Florida in setting the terms and conditions of petitioner's confinement. Petitioner first notes that Oregon constitutional rights are individual rights *vis-à-vis* the government that may be violated no matter where the violation occurs. *See State v. Davis*, 313 Or 246, 253-54, 834 P2d 1008 (1992) (acts of Mississippi officers and Oregon officers in arresting and questioning defendant in Mississippi subject to Oregon constitutional challenge). Secondly, petitioner argues that the acts of Oregon employees or agents can constitute Oregon state action. *See State v. Tucker*, 330 Or 85, 90, 997 P2d 182 (2000) (private tow truck operator acting at request of officer must act within bounds of Oregon Constitution); *State v. Sines*, 359 Or 41, 51-52, 379 P3d 502 (2016) (private individuals acting as agents of the state engage in state action for purposes of Article I, section 9).

The problem with petitioner's argument in this case, however, is that the parties dispute whether Florida officials are acting as Oregon's agents in setting the terms and conditions of petitioner's confinement. Petitioner argues that the ICC makes receiving states the agents of sending states for all purposes and points to the provisions of the ICC that provide that when Oregon officials transfer an inmate to another state, the receiving state acts "solely as agent for the sending state." ORS 421.245, Art IV, § 1. In addition, petitioner contends that the ICC grants Oregon officials, among other things, "access, at all reasonable times," to the out-of-state institution, *id*. at § 2; the right, "at any time," to remove the inmate from the receiving state, *id*. at § 3; the authority to authorize and conduct hearings to which the inmate is entitled by the laws of Oregon, *id*. at § 6; and the authority to receive regular reports from the receiving state in order to review the inmate's records, *id*. at § 4. In contrast, the state contends that, under the ICC, the receiving state controls day-to-day conditions of confinement, including discipline, and cites ORS 421.425, Article IV, section 5, for that proposition. ORS 421.425, Art IV, § 5 (receiving state will treat inmate in "reasonable and humane manner" and "equally with" other inmates); *Daye*, 171 Vt at 481; *Glick*, 889 P2d at 1393. Because we decide this case on an alternative ground, we need not resolve that dispute.

C.  *The Director of ODOC is a proper defendant.*

The final question on review is whether the Director of ODOC is a proper defendant in a petition for a writ of habeas corpus by an inmate held out of state pursuant to the ICC. The state contends that the director is not a proper defendant because she is not petitioner's physical custodian, and because she does not control the day-to-day conditions of petitioner's confinement in Florida. Petitioner argues that the director is the "officer or person by whom [petitioner] is imprisoned or restrained," and that she is therefore an appropriate defendant under the habeas statutes. ORS 34.360. For the following reasons, we agree with petitioner.

ORS 34.362 provides that a petition for a writ of habeas corpus must "[c]omply with [the] requirements of ORS 34.360(1), (3), (4), and (5)[.]" ORS 34.360(1) specifies that the petition must state the "officer or person by whom the party is imprisoned or restrained." That individual is the appropriate defendant in a habeas proceeding, whether he or she has physical, or only constructive, custody of the petitioner. That interpretation of the habeas statute is consistent with our holding in *Anderson*. 212 Or at 6. In that case, we acknowledged that "ordinarily," a habeas claim "must be against the one having physical custody of the plaintiff." *Id*. at 5. Even so, we concluded that, despite the plaintiff's transfer from the jail to the penitentiary, the plaintiff had appropriately named the sheriff as the defendant in his petition because, "for the purpose of [the] proceeding[,] plaintiff remain[ed] constructively in the custody of the sheriff pending determination of the appeal." *Id*. at 6.

Transfer out of state pursuant to the ICC is another circumstance in which the legal or constructive custodian is the proper defendant in a petition for habeas relief. The transferred inmate remains "subject to the jurisdiction of the sending state." ORS 421.245, Art IV, § 3. At any time, the sending state may remove the transferred inmate from the receiving state. *Id*. Thus, although a transferred inmate is in the physical custody of the receiving state, the sending state retains sole authority to remove petitioner from the conditions about which he complains. As Church explains in his *Treatise on the Writ of Habeas Corpus*, the writ of habeas

corpus "is directed to a person detaining another, commanding him to produce the body of the person detained." William S. Church, *A Treatise on the Writ of Habeas Corpus* § 87, 137 (2d ed 1893). Historically, the person physically detaining the inmate was the proper defendant, because that person alone had the authority to "bring [the detainee] before the judge to explain and justify, if he could, the fact of imprisonment." *Id*. § 88 at 140. In this case, that person is the Director of ODOC, despite the fact that she does not have physical custody of petitioner, and we conclude that petitioner properly named her as the defendant in his petitions.

Lastly, we address the state's argument that the director is not the proper defendant because she lacks control over the conditions about which petitioner complains. Just as it did in making its argument that petitioner failed to allege a cognizable violation of his constitutional rights, the state misses the thrust of petitioner's argument. Petitioner's argument is not that he is entitled to habeas relief because the Florida prison has different policies and programming than Oregon prisons. His argument, instead, is that the rules and institutional policies in place in the Florida prison give rise to violations of the state and federal constitutional rights to which he remains entitled. Although the state may be correct that the director has no authority to control the conditions of confinement in out-of-state prisons, a question that we do not decide, we do not agree that the director lacks the ability to remedy petitioner's constitutional complaints. The director retains the right to remove petitioner from the receiving state and return him to Oregon, or, alternatively, to transfer petitioner to a state that is also party to the ICC but whose institutional rules and policies will not give rise to constitutional violations. In that respect, the director *does* control the conditions of petitioner's confinement. But, regardless, the defendant in a habeas proceeding need not have direct control over the immediate, allegedly unconstitutional, conditions of confinement; the defendant need only have a custodial relationship with the petitioner. ORS 34.360(1).

In summary, we conclude that (1) inmates incarcerated outside of Oregon as the result of transfer under the ICC, ORS 421.245, are permitted to file claims for habeas

corpus in Oregon; (2) petitioner alleged cognizable violations of the state and federal constitutions; and (3) the Director of ODOC is the proper defendant in petitioner's habeas petitions. Those conclusions require that we remand to the circuit court for further proceedings.

The decisions of the Court of Appeals are affirmed. The judgments of the circuit court are reversed, and the cases are remanded to the circuit court for further proceedings.